[Civ. No. 12198.   First Dist., Div. One.   Apr. 7, 1943.]

AMY MATTESON, Appellant, v. STATE BOARD OF EDUCATION et al., Defendants; JAMES P. NOURSE, as Superintendent of Schools, etc., et al., Respondents.

Walter H. Duane for Appellant.

John J. O'Toole, City Attorney (San Francisco), Walter A. Dold, Chief Deputy City Attorney, and Irving G. Breyer for Respondents.

Earl Warren, Attorney General, and T. A. Westphal, Jr., Deputy Attorney General, as Amici Curiae on behalf of Respondents.

KNIGHT, J.—This is an appeal from a judgment in favor of respondents in a proceeding in mandamus, the basic question involved being whether the State Commission of Credentials in the exercise of the authority conferred upon it by a rule adopted by the State Board of Education to renew state teaching credentials may bring about the summary dismissal

of a teacher holding requisite teaching credentials and permanent tenure under the state law, and thus deprive her of the right to teach anywhere in California, by refusing, ex parte, to renew her state credential; or whether such teacher is entitled to the protection of those provisions of the School Code which declare in effect that a teacher's credentials may not be revoked by the state or the county board of education, nor may a teacher holding permanent tenure be dismissed from her employment, unless specific charges are filed against her and she is afforded a trial thereon.

██ The essential facts are these; Prior to the month of August, 1929, appellant successfully completed the teacher's training course prescribed by the State Board of Education, and thereupon, pursuant to the provisions of the California School Code, became entitled to and there was issued to her by the State Commission of Credentials a general secondary school credential, which gave her the right to teach in the schools of that type and grade in California. About the same time there was issued to her a similar credential by the Board of Education of the City and County of San Francisco, to teach in the San Francisco schools. Thereafter and during the month of August, 1929, and continuously up to November, 1940, she was employed by the San Francisco School Department as teacher, librarian, and a teacher of English in a senior high school of said city. Meanwhile and during the month of August, 1931, by virtue of the provisions of section 5.500 of the School Code and section 135 of the city charter, she acquired tenure as a permanent employee of the Board of Education of said city. In June, 1935, the State Board of Education adopted certain rules with relation to the issuance and renewal of teachers' credentials, among which was a rule declaring that credentials "may be issued for a period of two years and may be renewed thereafter for periods of five years upon verification of at least five months of successful teaching experience in the public schools of California"; and in November, 1935, appellant applied for and was granted a renewal of her teaching credential for a period of five years. Prior to the expiration of that period and in September, 1940, she again applied for a renewal of said credential, and on November 20, 1940, her application was denied.

In connection with such denial the record shows the following: On October 21, 1940, the secretary of the Commission of Credentials wrote to the Deputy Superintendent of Schools

of San Francisco in charge of personnel, informing him of appellant's application for renewal, and asking, "Will it be possible for you to verify to us the length and success of her teaching experience?" On October 22 said deputy replied by mail stating that appellant had "been employed as a teacher in the San Francisco Public Schools since August 19, 1929." Under date of November 8 the commission's secretary again wrote to said deputy, and referring to the latter's letter of October 22 stated: "In this letter you made no reference to the success of Miss Matteson's experience. The Commission of Credentials is unwilling to grant renewal of a credential for a five year period unless the applicant submits definite verification of successful experience. We are, therefore, requesting you to give us additional information indicating the success of the experience secured by Miss Matteson since 1935." In response to that letter the deputy superintendent of schools forwarded to the secretary of the state commission a letter written to said deputy on November 12 by the principal of the high school in which appellant had been teaching; also a transcript of part of an interview which is purported to have taken place on June 10, 1940, between a different deputy superintendent of schools and appellant. In the high school principal's letter he stated, without giving any reasons therefor, that appellant's "work has been entirely unsatisfactory," and that "her work in this school is, in general, not satisfactory nor successful"; and it appears from the transcript of the interview of June 10 that the deputy superintendent of schools with whom the interview was had told appellant at that time that her work was "entirely unsatisfactory"; but so far as the transcript shows he did not specify any reasons upon which he based that statement. Appellant was unaware that these communications had been sent to the state commission, nor was she informed of the contents thereof nor given any opportunity to deny the statements made therein. The commission simply notified her by letter dated November 25, 1940, that since she had "failed to verify at least five months of successful teaching experience secured in the public schools of California" her application for the renewal of the credential was denied; and thereupon and on November 30, 1940, the Board of Education of San Francisco sent her by mail a copy of a resolution passed by said board to the effect that "in compliance with section 5.420 of the School Code" her services as a teacher in the San Francisco schools had been discontinued.

At no time during the eleven years of her employment as a teacher were any charges ever preferred against her for any cause whatsoever, nor at any time during that period was she ever suspended from duty for any cause or subjected to any disciplinary measures of any kind; and it is conceded by all parties that the effect of the refusal of the state commission to renew her teaching credential, if legal, not only completely nullified the statutory permanent tenure she had acquired under the state law, but deprived her of the right to teach school anywhere in California.

Claiming that the action of the state commission in thus refusing ex parte to renew her teaching credential, and that of the city board of education in summarily dismissing her from her position as a permanent employee, were illegal, she brought this proceeding in mandamus in the superior court, asking that she be restored to her position with back salary from the date of the alleged illegal dismissal. The complaint was filed on December 9, 1940. The State Board of Education, its individual members, the State Superintendent of Public Instruction, and the members of the State Commission of Credentials, were made parties, but the demurrer filed in their behalf was sustained without leave to amend, and judgment thereon was entered in their favor, so that the proceeding went to trial on the merits against the remaining parties, consisting of the Superintendent of Schools of San Francisco, the members of the Board of Education of said city, and a principal of one of the high schools. However, at the end of the trial, the court in its decision expressly found that "It was stipulated by all parties to the action that the respondents [naming the state boards and the state officials] may be dismissed without prejudice, upon the understanding that said respondents so dismissed would recognize any order of reinstatement of petitioner that may be made against the remaining respondents." On February 18, 1942, judgment was entered in favor of the remaining respondents, from which the appeal herein was taken.

It is our conclusion that under the facts stated the action of the state commission in thus denying appellant's application for a renewal of her credential, and the subsequent action of the local board in summarily dismissing her as a permanent employee of the district, was in violation of her rights as a teacher under the state law.

To be eligible to teach in the public schools of California a

person must have two teaching credentials, one from the state and the other from the district in which the teaching service is performed. The state credential is issued by the State Board of Education, through the Commission of Credentials; the other by the local board of education; and the state school law confers upon each board the power to revoke or suspend for certain causes, including incompetency and unfitness for service, the credential so issued by them, but only after charges are filed, notice is given to the accused teacher, and an open trial had on those charges.

With regard to state credentials, section 5.381 of the School Code provides that the State Board of Education shall have power and it shall be its duty to revoke or suspend for immoral or unprofessional conduct, or for persistent defiance of, and refusal to obey, the laws regulating the duties of persons serving in the public school system, or for evident unfitness for service, credentials issued in accordance with the provisions of the code, and to adopt such rules for said revocation or suspension as it may deem expedient or necessary. But the next section provides that whenever the holder of any credential issued by the state board is charged with having committed any of the acts enumerated in section 5.381, the state board may, in its discretion, "after notifying the person so charged of its intention to do so," require the county board of education of the county in which such person is teaching, "to give notice of, and conduct, a hearing of such charges in the manner prescribed by law for the hearing of charges for the revocation or suspension of a certificate by a county board of education"; that "the county board of education, after such hearing, shall report to the state board . . . its findings, and a summary of the evidence, and shall make a definite recommendation concerning the revocation or suspension . . ."; and that upon "receipt of a copy of such findings, summary of evidence and recommendation, the state board . . . may suspend or revoke" the state credential, or order the charges dismissed.

As to credentials issued by local boards, the school law provides that they too may be revoked or suspended by the local board for immoral or unprofessional conduct, evident unfitness for teaching, or persistent defiance or a refusal to obey the laws regulating teachers, but that "no certificate shall be revoked or suspended . . . until after a hearing before the county board of education, and then only upon the affirmative vote of at least four members of the board" (Secs. 5.390 and

5.391, School Code), and that all such charges shall be presented to the board in writing and shall be verified under oath; that notice of the time of hearing and a full and complete copy of the charges shall be furnished to the accused at least ten days before the hearing; that the "accused shall be given a fair and impartial hearing and shall have the right to be represented by counsel." (Secs. 5.392-5.394, School Code.)

The procedural set up required to be followed in the case of dismissal of teachers holding permanent tenure is much more rigid. In this connection the pertinent provisions of the School Code declare: "No permanent employee shall be dismissed except for one or more of the following causes: . . . incompetency, evident unfitness for service, physical or mental condition unfitting him to instruct and/or associate with children, persistent violation of or refusal to obey the school laws of California, or reasonable regulations prescribed for the government of the public schools, by the State Board of Education or prescribed by the governing board of the school district employing said employee. . . ." (Sec. 5.650) "Upon the filing of written charges, duly signed and verified by the person filing the same, with the governing board of the school district, or upon a written statement of charges formulated by the governing board, charging that there exists a cause or causes, for the dismissal of a permanent employee of said district, the governing board may, upon majority vote, except as hereinafter provided, if it deems such action necessary, give notice to the said permanent employee of its intention to dismiss him at the expiration of thirty days from the date of service of such notice, unless said employee demands a hearing as hereinafter provided. . . . A copy of the charges filed together with a copy of this Article shall be attached to the notice. . . ." (Sec. 5.651.) "Governing boards of school districts shall not act upon any charges of incompetency other than incompetency due to physical or mental disability unless during the preceding term or half school year prior to the date of the filing of such charge, and at least ninety days prior to the date of such filing, the board or its authorized representative shall have given the employee against whom the charge is filed, written notice of such incompetency, specifying the nature thereof with such particularity as to furnish the employee an opportunity to correct his faults and overcome his incompetency." (Sec. 5.652.) "When any employee

who has been served with notice of the governing board's intention to dismiss him, shall demand such hearing, the governing board shall have the option either to (1) rescind its action, or (2) file a complaint in the superior court of the county in which the school district or the major part thereof is located, setting forth the charges against such employee and asking that the court inquire into such charges and determine whether or not such charges are true, and if true, whether or not they constitute sufficient grounds for the dismissal of such employee, under the provisions of this code, and for judgment pursuant to its findings. If the board elects to file a complaint such complaint must be filed within thirty days from the date of the employee's demand for hearing. If the complaint be not filed within such period the board's action shall be deemed to be rescinded and all charges dismissed. . . .'' (Sec. 5.654.) Then follows an elaborate system of procedure which must be adhered to in filing, hearing and determining the proceeding in the superior court, including the form of pleadings, appointment of referees, the hearing of the exceptions to the referee's report, the form of judgment, and the right of appeal. And among the provisions included therein is the following: ''Should the cause be incompetency due to physical or mental disability, in lieu of dismissal the judgment may require the employee to take a leave of absence for only such period as may be necessary for rehabilitation from such incompetency, such leave of absence not to exceed two years; in which event such employee shall be entitled to the benefits provided or authorized by this code to employees of school districts absent from their duties on account of sickness.''

▇ From the foregoing it is quite obvious that it was the legislative intent that no teacher and especially one holding permanent tenure should be deprived of his credential to teach in any of the public schools in this state without some sort of charges being filed against him, and without being afforded the right of trial thereon, so that he may defend himself against such charges.

▇ In support of the trial court's judgment it is argued that the rule of the State Board of Education which gives rise to this controversy should be construed to mean that despite the fact that the teacher has taught continuously throughout the five year period, and that notwithstanding during that time no charges whatever have ever been preferred against him for incompetency, unfitness for service, or any other

cause, his application nevertheless must be denied unless someone—the rule does not specify whom—verifies that for at least five months out of the five year period his teaching has been "successful"; and that in any event the commission has the power to deny his application for renewal ex parte if unknown to the teacher some person connected with the local school department—not necessarily the local board itself—sends in a communication to the effect that in his opinion the teacher has not during the five preceding years had five months of "successful" teaching experience.

We are unable to agree to such construction. In view of the mandatory provisions of the School Code hereinabove set out relating to the procedure that must be followed before a teacher's credentials may be revoked or suspended, or before a teacher holding permanent tenure may be dismissed, the words "five months of successful teaching experience" as employed in said rule, reasonably construed, must be taken to mean a showing of five months teaching during the five year period of the credential without charges of unfitness or incompetency ever having been filed against the teacher. It is conceded in the amicus curiae brief filed in behalf of the State Board of Education that the rule is susceptible of the foregoing construction, but it is argued that in order to give it such, little if any meaning is given to the word "successful." However, that is not true, because admittedly the word "successful" has a broad and extensive meaning; and it is far more reasonable to suppose that it was the intention to give the rule the construction above mentioned than to say that the action of the commission in the exercise of the authority conferred upon it by said rule is to be controlled by the mere ex parte opinion of someone employed in the school or district as to whether the teaching experience of the teacher has been successful. Moreover, if the rule be given the interpretation contended for by respondents, it would be clearly inconsistent with the statutory provisions above set forth relating to revocation, tenure and dismissal, and therefore void, for the reason that the school law expressly declares that the rule-making power vested in the State Board of Education by section 2.1383 of the School Code pursuant to which the rule herein was adopted, is limited to rules "not inconsistent with the laws of this state."

It is argued also that the power of revocation of a state teaching credential is distinct from the power to deny a renewal of it, and that therefore the law governing the exercise

of the former can have no application in governing the exercise of the latter. But even though such distinction may be drawn, the exercise of either power brings about the same result—the teacher is not only ousted from his position, but is deprived of the right to teach anywhere in California; and as above shown, that may be accomplished only after charges are preferred and trial had thereon.

At the trial of the present action respondent sought to justify the ex parte refusal to renew appellant's credential and her summary dismissal by the local board by introducing evidence which they contended proved that throughout the entire five year period preceding her dismissal she had been an "incompetent" teacher and "unfit for service." However, during that entire five year period no charges of incompetency or unfitness were ever filed against her. Both remedies for her removal as a teacher on those grounds were at all times available to the school department, but nothing was ever done. On the contrary she was continued in her employment as a teacher, and paid full salary for her services. Therefore, even though it be assumed that such evidence would have been legally sufficient to warrant the revocation of her teaching credential and her dismissal as a permanent employee, such evidence has no bearing upon the issue with which we are here dealing.

Summarized, our conclusions may be stated as follows: (1) Since it is admitted that for the full five years preceding the date of the expiration of appellant's state teaching credential she taught continuously in the public schools of this state and that during that period no charges of incompetency or unfitness to teach were ever filed against her, she was entitled to a renewal of her state teaching credential, and therefore the action of the commission in denying such renewal was illegal; (2) the action of the commission being illegal, the subsequent summary action of the local board, based thereon, in dismissing appellant without charges or trial was likewise illegal; (3) the action of both boards being illegal, she was entitled to be restored to her position with full salary from the date of her dismissal.

The judgment is therefore reversed.

Peters, P. J., concurred.

WARD, J.—I dissent. For convenience I will designate the original respondents as the state board and the county board respectively.

To teach in the general secondary public schools of this state, it is essential that a teacher, unless he or she has a life diploma (School Code, secs. 5.270-5.281), be the holder of a credential, verifying successful teaching experience (School Code, sec. 5.420). In the procurement of such certificate or credential, the burden of proof in that regard is upon the applicant. The trial court found that the credential herein was denied not only because petitioner failed to have verified the necessary period of successful teaching experience, but that she did not have the required qualifications, as borne out by an investigation by officials and employees of the county board and by her personal appearance before a committee. The trial court further specifically found "that said statements disclosed the inefficiency of said petitioner which statements were true in fact." In the conclusions of law the following appears: "That said respondent Board of Education of the City and County of San Francisco could not legally employ said petitioner as a public school teacher subsequent to the expiration of her teaching credential. That the report made by the respondent Board of Education of the City of San Francisco to the State Board of Education of the State of California that the teaching experience of the said petitioner was unsuccessful was a true statement based upon true facts and was not arbitrary, discriminatory, or capricious."

There is ample evidence to support the conclusion of the trial court, and no evidence was introduced to the contrary. The majority opinion reverses the judgment and directs that petitioner be restored with full salary from the date of her "dismissal." There is no order of dismissal by the county board—merely a notice of discontinuance of service. It is true that the findings, in at least one instance, use the word "dismissal," but the date referred to is actually that of termination of service.

The majority opinion contains no order directing the state board to issue to the county board a credential or certificate, and the county board under the law is prohibited from employing petitioner without one. (School Code, sec. 5.420.) If the majority opinion may be construed as impliedly directing the issuance of such certificate, the order would be unenforceable. The state board is not a present party to this proceeding.

It seems to have been stipulated that the state board would be bound by any finding of the trial court that petitioner

was efficient. No such finding was made, and the majority opinion does not so hold unless the languge to the effect that five months of continuous teaching during a period of five years without the filing of formal charges of unfitness or incompetency is proof of successful teaching experience, may be so construed.

If the majority opinion may be interpreted to mean that the local board should verify to the state board the required period of successful teaching experience by petitioner, so that the state in turn might issue a certificate to be used by the county board, the latter would be required to perform an act—that of issuing a false verification—which in good conscience it should not do except upon the theory advanced in the majority opinion that continuous service is successful service.

The theory of the majority opinion is that the acts of both boards were illegal—not that the state board was unjustified in finding in effect "inefficiency." The majority opinion holds "even though it be assumed [which assumption is proved not only by a preponderance of the evidence but beyond all reasonable doubt] that such evidence would have been legally sufficient to warrant the revocation of her teaching credential and her dismissal as a permanent employee, such evidence has no bearing upon the issue with which we are here dealing." In other words, the majority opinion, unfortunate in effect, holds that it is immaterial whether an inefficient teacher is foisted upon the young pupil; that the real question is—whether the procedure taken to relieve the pupil of inefficient teaching is proper.

The aim of the Teachers' Tenure Act is to enable schools to obtain a permanent staff by which to accomplish their real purpose—that of efficient teaching. (*Fresno City H. S. Dist.* v. *De Caristo,* 33 Cal.App.2d 666 [92 P.2d 668].) Tenure should not depend upon the caprice of the members of governing boards, but the existence of arbitrary, opinionated determination does not appear from the record in this case.

In the past, teachers' tenure laws have protected both teacher and pupil; but the most ardent advocate of teachers' tenure never contemplated that the stringent rules for the protection of the teacher should be used in the defense of an incompetent instructor to the detriment of the pupil. "The entire school system is provided in the interest of the school children and not otherwise." (*Steele* v. *Board of Trustees,*

121 Cal.App. 419, 420 [9 P.2d 217].) After all, the public is interested in the protection of the pupil rather than the "tenure" of an inefficient teacher. This brings us to a consideration of the technical grounds for the "reversal," which may well be met by both legal and practical considerations.

There is a distinction between a life diploma and a credential. A teacher with tenure rights must have one or the other. There does not appear to be anything unreasonable in the statutory requirement that after the probationary period a teacher must continue to demonstrate efficiency in order to be entitled to a life diploma. The life diploma is issued for an indefinite period in that it is issued for life. Prior to the granting thereof a credential may be issued, but "No certificate granted upon a credential issued by the state board of education for a limited period shall be renewed or extended unless the credential upon which such certificate was issued has been renewed or extended, and then only for the period of such renewal or extension of the state board credential." (School Code, sec. 5.314.) The state board has adopted certain rules—one being to the effect that until a teacher is entitled to a life diploma a certificate may be issued upon proof of "successful teaching experience" within certain periods.

In particular I cannot agree with my associates in the definition of "successful teaching efficiency." The opinion states "(1) Since it is admitted that for the full five years preceding the date of the expiration of appellant's state teaching credential she taught continuously in the public schools of this state and that during that period no charges of incompetency or unfitness to teach were ever filed against her, she was entitled to a renewal of her state teaching credential. . . . " Thus the test is based upon the mere filing of charges.

Assuming that the state board, not a present party to this "reversal" should voluntarily adopt the views expressed in the majority opinion, it would require a departure from the rulings and precedents established for over fourteen years as appears from the brief of amicus curiae. I suggest with deference that the majority opinion has failed to differentiate between a teacher's tenure and the necessity of having a state diploma or credential as well as a county certificate in order to teach in the public schools, and that it has failed to differentiate between revocation and renewal. In order

to continue teaching a teacher with tenure rights must have a teaching credential or a life diploma.

Petitioner does not hold a life diploma, but was merely teaching with "permanent tenure" through the assistance of a "credential certificate." Permanent tenure is not so inviolate that the Legislature may not control its existence, at least in the interest of school children. (School Code, sec. 5.406; *Taylor* v. *Board of Education,* 31 Cal.App.2d 734 [89 P.2d 148].)

A permanent teacher may be discharged without the filing of charges pursuant to section 5.650 and may be reduced to a probationary status. (School Code, sec. 5.711; *Davis* v. *Gray,* 29 Cal.App.2d 403 [84 P.2d 534].) A teacher, acting and in fact a "principal" for twenty years and then demoted to high school teacher, is not a permanent classroom teacher. (*Griffin* v. *Los Angeles etc. School Dist.,* 53 Cal. App.2d 350 [127 P.2d 939].)

The evidence presented to the trial court shows without contradiction or explanation that petitioner neglected reports important to her work; that she was unable to control students; that she was shifted from one department to another and that the head of the department "found this teacher's classes in such a state of stand-still that he took one class every day for two weeks to prepare them for the English essentials test, the teacher being in the room all the time. There simply was no progress being made and the teacher was unable to put over any instruction."

Petitioner contends that "successful teaching experience" means uninterrupted, i.e., continuous teaching; in other words, that a board's action in the matter of recommendation is controlled by the single factor of the time of actual employment. There seems to be no discretion given the state board relative to the issuance of a credential upon the presentation of a preliminary requisite diploma. (School Code, sec. 5.120.) It may, however, adopt rules not inconsistent with the laws of the state for the government of specified schools. (School Code, sec. 2.1383.) Subsequently the Legislature provided that the credential might be revocable (Stats. 1937, p. 1711) if not renewed or extended. (School Code, secs. 5.314, 5.315.) Even a life diploma may not be issued except upon the submission of a "valid teaching certificate" by a county board of "successful professional service." (School Code, sec. 5.263.)

In applying this rule, "successful" has reference to something more than attendance, etc., even continuous attendance in the classroom. The Supreme Court of this state has adopted this view in *Richardson* v. *Board of Education,* 6 Cal.2d 583, 586-587 [58 P.2d 1285], where the court said: "'Plaintiff's further contention that he was successfully employed for three complete years because a contract subsisted throughout each year is untenable. It would be violative of the clear purpose of the law and of the terms of the contract of employment, as well, to allow one holding a contract as a probationary teacher for three successive years to acquire the status of a permanent teacher without having rendered the *successful service* which furnishes the reason for the probationary period. Neither can we agree that substantial as distinguished from full compliance with the terms of his contract is sufficient to bring plaintiff within the classification he seeks.'" (Italics added.)

Upon this question the brief of amicus curiae, filed by the attorney general, says: " . . . the situation is comparable to a city attorney with civil service status under a city charter provision. He has a right to a continuance of employment by virtue of his civil service standing. However, he must hold a valid license to practice law in order to practice his profession. Therefore, if his State license were revoked, or if he failed to renew it annually, he would not be eligible to function as an attorney in the City Attorney's office." Would there be anything illegal in requiring a licensee of the healing art at stated intervals to produce proof of efficiency as a matter of protection to the sick and afflicted until the issuance of a "life diploma" if the nature of the proof were reasonable?

When it is a question of revocation during the five-year period, trial under the tenure act provisions may be appropriate, but there is nothing unreasonable in requiring a teacher of the classification of petitioner to obtain a certificate of successful teaching. The majority opinion does not hold to the contrary.

Petitioner has had her day in court and the right to defend herself and her position. School boards are not above the law; neither are teachers. Petitioner was accorded a personal hearing before the credential committee of the state board ten days prior to the expiration date of her credential, at which hearing the contemplated action of the board

was communicated to her. Following such hearing she was formally advised that her application for the renewal credential had been denied. No arbitrary action was taken by the state board, and, as stated, the decision was reached after investigation and hearing. Petitioner made no demand that the matter be refered to the county board for disposition, or that formal charges be filed by the county board, or that such charges, if brought, should be heard in the superior court. Ten days after the expiration date of her credential the present petition was filed. No request for a trial on the issue of efficiency was made. On the contrary, objection was strenuously interposed to such a hearing in the superior court. Section 2.1938 of the School Code is ''not inconsistent with the laws of this state.''

To my mind the only difference in filing charges under the Teachers' Tenure Act and the present proceeding lies in the fact that under the tenure act she would have been given ninety days to correct her inefficiency. The record discloses that approximately one hundred eighty days prior to the order of discontinuance the deputy superintendent of high schools made inquiry of petitioner whether there was anything that could be done to overcome her ''inefficiency.'' Petitioner's only reply was the suggestion that she might be removed to a higher grade school.

It might be contended that under the tenure act petitioner could be required, upon the demand of the trial court, to take a two-year leave of absence on account of sickness. (School Code, sec. 5.654.) The majority opinion restores her to service after the two-year period, with the right to back pay. On the record in this case, a judgment ordering a leave of absence for the purpose of rehabilitation in face of the repeated warnings to petitioner would be an abuse of discretion.

As stated, the reversal directed in the majority opinion is not based upon the issue of efficiency, but upon a question of procedure. No judgment should be reversed on the ground of error in procedure unless in the opinion of the appellate court, upon consideration of the entire record, the error has resulted in a miscarriage of justice. (Cal. Const., art. VI, sec. 4½.) Petitioner was accorded a fair trial upon a proceeding instituted by her, in which records were introduced and witnesses examined and cross-examined, as the result of which the tribunal having jurisdiction reached the conclu-

sion that the petitioner was justly chargeable with inefficiency. In my opinion the judgment should be affirmed.

Respondents' petition for a hearing by the Supreme Court was denied June 3, 1943. Edmonds, J., and Schauer, J., voted for a hearing.