[S. F. No. 21690. In Bank. Aug. 11, 1964.]

JOHN W. MASS, Plaintiff and Appellant, v. THE BOARD OF EDUCATION OF THE SAN FRANCISCO UNIFIED SCHOOL DISTRICT et al., Defendants and Appellants.

Marshall W. Krause and Albert M. Bendich for Plaintiff and Appellant.

Joseph Genser as Amicus Curiae on behalf of Plaintiff and Appellant.

Thomas M. O'Connor, City Attorney, George E. Baglin, Deputy City Attorney, and Irving G. Breyer for Defendants and Appellants.

TOBRINER, J.—In a case in which a local board of education suspends a teacher upon charges which the board fails to establish as proper, pursuant to statutory requirements, the teacher is entitled to reinstatement, to full salary from the date of suspension, including retirement benefits, and to interest from the dates upon which such salary payments were due. The board fails in its attempt to defeat such recovery upon the ground of an alleged automatic termination of employment rights because of a lapse of the teacher's credentials during a part of the period of the suspension. It fails, too, in its effort to mitigate damages since it waived this affirmative defense by neither pleading nor proving such mitigation.

This litigation now presents its third appeal. Over ten years ago, on December 8, 1953, when the Board of Education of the San Francisco Unified School District (hereinafter called board) suspended plaintiff for failure to answer questions propounded by a congressional subcommittee (Ed. Code, § 12955), this case started upon its long course. At that time, in accordance with the statute, plaintiff demanded a hearing; the board thereupon filed an action incorporating the requisite charges. (Ed. Code, § 13412; at that date, § 13529.) The trial court upheld the charges and found that they constituted grounds for dismissal.

Plaintiff appealed the judgment to this court; we reversed it and remanded it for a new trial; we held that plaintiff had been deprived of a proper hearing under Education Code section 12955 because of the failure to inquire into plaintiff's reasons for invoking the privilege against self-incrimination (*Board of Education* v. *Mass* (1956) 47 Cal.2d 494 [304 P.2d 1015]). We filed our remittitur on January 27, 1957.

On May 29, 1957, plaintiff moved to remand the proceeding to the board for full hearing in accordance with the remittitur but the court denied the motion without prejudice. Thereafter the board did not initiate retrial but permitted plaintiff's status to remain in this uncertain and suspended condition.[1]

Despite its role as plaintiff in the action which we had re-

---

[1]On March 17, 1960, plaintiff filed an affidavit with the board alleging that he was willing to answer questions (a) through (f) listed in section 12955 to the effect that he presently did not personally advocate the violent overthrow of the government, that he presently did not hold knowing membership in any organization which advocated such violent overthrow, that he had no knowing past membership since October 3,

manded, the board failed to bring it to trial; the present plaintiff, after the elapse of three years from the date of the remittitur, moved for dismissal pursuant to section 583 of the Code of Civil Procedure. Although the trial court denied the motion, the District Court of Appeal issued its writ of mandate ordering that the action be dismissed (*Mass* v. *Superior Court* (1961) 197 Cal.App.2d 430 [17 Cal.Rptr. 549]). Accordingly, on January 30, 1962, the trial court entered a dismissal of the board's suit to remove plaintiff from his position.

On January 31, 1962, plaintiff notified the board of the dismissal, demanding, pursuant to Education Code sections 13436 and 13439, reinstatement to his former position within five days as well as payment of full salary from December 8, 1953, plus all allowable costs and damages. On February 6, 1962, the board rejected these demands. Plaintiff then brought the present proceeding in mandamus.

The undisputed facts as to plaintiff's teaching credentials are that plaintiff renewed his general secondary credential, under which he taught, on September 13, 1951; that over five years later, on November 30, 1956, it expired; that on May 30, 1960, plaintiff applied for a reissuance of the credential, but, because of a change in the requirements, the State Board of Education issued to him a junior college credential retroactive to that date. The local board did not learn of the lapse of the credential until almost four years after the date of its expiration, but on September 6, 1960, adopted a resolution that plaintiff's "services as a certificated employee be terminated as of December 1, 1956. . . ."

The trial court denied plaintiff's claim for reinstatement; it awarded him back salary from December 8, 1953, only to November 30, 1956; it denied retirement benefits for that period; it struck the claim for general damages.

1. *The right to reinstatement.*

We shall point out that since plaintiff admittedly possessed tenure, the board could dismiss him only if it complied with statutory procedures which it confessedly did not pursue. We also explain our rejection of the board's contention that,

1945, in such an organization, that he belonged to the Communist Party from 1947-1949, that he did not presently belong, and that he presently did not advocate the support of a foreign government against the United States in the event of hostilities.

irrespective of the statutory procedures, its refusal to reinstate could properly rest upon automatic termination of plaintiff's employment rights as a consequence of the lapse of his credential.

The strict statutory procedures for dismissal of a teacher are set forth in sections 13401-13452 of the Education Code; section 13403 provides that the board can dismiss a "permanent employee" only for the causes there specified. The board does not question the fact that plaintiff was a "permanent employee." The section does not list a lack of credential as one of such bases. Section 13412 provides that if a teacher, having "been served with notice of the governing board's intention to dismiss him," demands a hearing, the board must either "rescind its action" or, upon the filing of a complaint in the superior court, prove the asserted charges. Section 13436 declares that "If the judgment determines that the employee may be dismissed, the governing board may dismiss him. . . . Otherwise the employee may not be dismissed. . . ." Indeed, if he has been suspended pending the court action, the teacher "shall be reinstated within five days after the entry of judgment in his favor, and shall be paid full salary by the governing board for the period of his suspension." (§ 13439.)

The board has not obtained, and, indeed, cannot now obtain, a judgment determining "that the employee plaintiff may be dismissed." The only action which the board instituted, pursuant to statute (Ed. Code, § 13412 et seq.), for the determination of that issue, has been dismissed; the judgment of dismissal is final. Under the applicable statutes of limitation, no new statutory proceeding can now be filed (Ed. Code, § 13413) or tried (Ed. Code, § 13433). The board cannot found the dismissal upon its own failure properly to pursue the provisions of the statute.

The board, however, seeks to defeat the statutory command by the contention that plaintiff's failure to renew his credential in 1956 automatically forfeited his status as a permanent employee and absolved the board of any further obligation. This hypothesis, however, rests upon sections of the Education Code and upon decisions that do not support it.

The board's cited sections 13251, 13252, and 13274, which restrict employment by local boards to teachers holding credentials from the State Board of Education, and section 13511, which confines payment to such teachers, do not

automatically deprive teachers of tenure or of status as permanent employees. These statutes implement a statewide system of certification by the requirement that only teachers so qualified shall be eligible for employment by the local boards. These provisions do not condition *tenure rights* or status upon certification; such rights are separately defined in other sections of the code.

Indeed, the Legislature has provided employment protection for eligible teachers who have inadvertently allowed their credentials to lapse; none of the statutes remotely suggest that tenure rights terminate with the expiration of a credential.[2] To the contrary, section 13253, operative from the date when plaintiff failed to renew his credential to the date when he obtained a new credential, authorized the "governing boards of school districts" to employ a person without a credential if he applied for "such certification document" before ". . . the actual service" of such person commenced. If, pursuant to section 13439, the board had "reinstated" plaintiff, no question as to his credential would have arisen; plaintiff could have applied for his credential, and it would have been automatically furnished.

As the board points out, "had petitioner applied for renewal he would have been absolutely entitled thereto. (*Hall* v. *Scudder*, 73 Cal.App.2d 433, 436 [168 P.2d 990]; *Payne* v. *Real Estate Comr.*, 93 Cal.App.2d 532, 535-536 [209 P.2d 419]; *Matteson* v. *State Board of Education*, 57 Cal.App.2d 991 [136 P.2d 120].)" The board further explains that the Legislature did not give the State Board of Education or the Commission of Credentials "power to deny an application for renewal of a credential because a local board of education has brought charges of violation of the Dilworth Act,

---

[2]The history of the protective statutes shows a legislative intent to avoid technical automatic termination of a teacher's rights because of an inadvertent lapse of a credential. The Legislature provided, for instance, in a previous statute for which another has now been substituted, "There are many teachers who through inadvertence or misunderstanding failed to make application" for renewal of teaching credentials (Stats. 1959, ch. 193, p. 2087, § 8). That finding was included in a curative statute designed, despite section 13511, to permit compensation to teachers whose certification had lapsed and had been renewed. Many such curative or relieving statutes have been adopted in the past (Stats. 1953, ch. 621; Stats. 1955, ch. 1673; Stats. 1957, ch. 896; Stats. 1959, 1st Ex. Sess. 1958, ch. 68; Stats. 1961, ch. 898.) Payment to such a teacher is now permitted upon approval by the State Board of Education (§ 13515).

insubordination, or unprofessional conduct.'' Consequently, the renewal of plaintiff's certificate entailed nothing more than the technicality of application.

We cannot find any basis in the Education Code for predicating the loss of a teacher's tenure rights upon his failure to perform a purely perfunctory act of application that would have automatically renewed his credential. We cannot ignore the sections, and the legislative history, to tie an automatic termination of plaintiff's rights to the distorted ballooning of a formality.

The board's citations emphasize the incongruity of equating a lapse of a certificate with an automatic termination of the tenure rights of a permanent employee. The cases illustrate the difference between the mere lapse of a credential, such as occurred here, and the revocation of a credential because of the teacher's disqualification. Disqualification, because of sexual offenses, led to automatic termination of credentials in *Lerner* v. *Los Angeles City Board of Education* (1963) 59 Cal.2d 382, 390, fn. 4 [29 Cal.Rptr. 657, 380 P.2d 98], and *Di Genova* v. *State Board of Education* (1955) 45 Cal.2d 255, 263 [288 P.2d 862]. Such revocation constitutes a declaration by the state board of the teacher's disqualification; the local board then cannot employ the teacher. Such a situation contrasts with the instant mechanical lapsing of a certificate which is automatically renewable.

Neither the cases nor the statutes support the asserted automatic termination of plaintiff's status; the statutes, indeed, compel his reinstatement.

The board argues, however, that even if plaintiff's employment were not automatically terminated, plaintiff, in order to obtain reinstatement, must still demonstrate that he possesses the requisite qualifications to teach; the board is not required to reinstate unqualified personnel. In the instant case, however, plaintiff obtained a junior college credential dated May 30, 1960; his tenure stems from employment at City College of San Francisco, a junior college; he is accordingly qualified to teach.[3] Furthermore, the board initiated plaintiff's suspension and failed to substantiate the charges. The burden rests on it to demonstrate plaintiff's unfitness. Not only has the board failed to show plaintiff's incompetence, but the only evidence adduced pertinent to this issue, con-

---

[3]Actually, under Education Code section 25423.5, plaintiff could be hired to teach English, his former subject, even if he had no certificate.

sisting of plaintiff's proof that he obtained subsequent certification, tends to show that he is so qualified.[4]

2. *The right to past salary.*

 We cannot agree with the board that, granting plaintiff's right to be reinstated, he cannot recover salary from 1956 to 1961 because he failed to show his professional qualification for a proper credential during that period. We have explained that the credential, which constituted plaintiff's certification of qualification, was available to plaintiff, and would, if he had applied for it, have been automatically forthcoming. As we have explained, to regard plaintiff's failure to pursue the mechanics of certificate-renewal as equivalent to plaintiff's disqualification is to misconceive the scheme of the state system of certification.

In any event, and because of these very premises, the Legislature has *explicitly* provided that the lack of credential will not preclude the payment of back salary to a teacher who has allowed the lapse of a credential. Section 13516.5 of the Education Code provides that past salary may be paid to a teacher reinstated by court order *"irrespective of whether such employee was the holder of a valid certification document during the period of such unlawful removal from his position."*[5] (Italics added.)

Despite the literal application of the section to the instant case, the board attempts to avoid its impact upon three premises, none of which can stand: (1) that the suspension here

[4]Similarly, the board's claim that plaintiff's laches bars his recovery cannot prevail. Since the board initiated the proceedings the burden of taking affirmative action rested with the board, not plaintiff. Nevertheless, plaintiff did undertake to remand the proceedings to the board for a new hearing after our last decision in this case but the board successfully objected to such a disposition of the matter. Plaintiff also filed an affidavit with the board which demonstrated his willingness to answer all pertinent questions. The board failed to sustain the charges; it cannot successfully defend upon the basis of plaintiff's alleged laches.

[5]Section 13516.5 reads: ''Notwithstanding any other provision of law, if prior to the effective date of this section any certificated employee of any school district is discharged from a position requiring certification qualifications contrary to the provisions of this code and is thereafter restored to his position pursuant to judicial proceedings in a court of competent jurisdiction, the governing board of the school district may pay such employee an amount equal to the amount which would have been paid to such employee from the date of such discharge to the date of restoration to his position, irrespective of whether such employee was the holder of a valid certification document during the period of such unlawful removal from his position.''

was "lawful" and hence plaintiff was not discharged "contrary to the provisions of this code," (2) that plaintiff was not restored to his position "pursuant to judicial proceedings," and (3) that the statute provides only that the school district "may" pay the back salary and thus is purely permissive.[6]

Despite the board's construction, the words "discharge . . . contrary to the provisions of this code" clearly apply to the instant situation. A teacher has been dismissed upon charges which failed of proof in court; his dismissal therefore violates the legal mandate of section 13436. Upon the board's failure to obtain a judgment upholding the teacher's dismissal, as required by that section, the original suspension or dismissal becomes "contrary to the provisions of this code."

The board's second contention that the reinstatement must be "pursuant to judicial proceedings" collapses because our order commanding that petitioner be reinstated must itself be "pursuant to judicial proceedings." Furthermore, if the board failed to obtain a favorable judgment in its original suit to dismiss plaintiff, then reinstatement as ordered by the code is "pursuant to" that judicial proceeding.

Finally, the board contends that although section 13516.5 *permits* it to compensate petitioner, the statute does not *require* it to do so. Although the word "may" customarily implies permissiveness (Ed. Code, § 36), words must be construed in their textual context. (Ed. Code, § 10.) The

---

[6]The statute requires liberality of interpretation of its provisions. Section 2 of the Education Code states that the code's "provisions and all proceedings under it are to be liberally construed, with a view to effect its objects and to promote justice." In the instant matter of redress for unlawful discharge, we accord this direction full application in view of the increasing importance in our society for protection from wrongful discharge of employees by governmental agencies, or wrongful deprivation of the right to pursue one's livelihood by private associations wielding semigovernmental powers. (See Traynor, *Better Days in Court for a New Day's Problems* (1963) 17 Vand.L.Rev. 109, 117; Gellhorn, Individual Freedom & Governmental Restraints (1958) ch. 3, p. 105; Hale, Freedom Through Law (1952) pp. 335-336.) We expressed the same approach in dealing with a different factual situation in *Lerner* v. *Los Angeles City Board of Education, supra* (1963) 59 Cal.2d 382: "In conclusion, we do not believe that in a society in which the individual so often finds himself dependent upon the action of administrative tribunals he should automatically suffer the loss of the right to pursue his profession by reason of time consumed by the administrative process itself in perfecting and enforcing his rights." (P. 399.)

word "may" here occurs in a statute defining a public duty. ▮ " 'Words permissive in form, when a public duty is involved, are considered mandatory.' " (*Harless* v. *Carter*, (1954) 42 Cal.2d 352, 356 [267 P.2d 4].) ▮ Otherwise the statute would condone arbitrary action of the board in selective compensation of discharged employees covered by the section. Moreover, the board asserts that it cannot perform the statutory dictate of section 13439 to reinstate and recompense plaintiff because to do so would *violate* the provisions of the code. Section 13516.5, however, which at least *permits* the board to compensate petitioner, belies this contention.

▮ The section rests upon the sound consideration that a teacher precluded from employment as a result of an unsubstantiated discharge cannot reasonably be required to perform the useless act of renewing his certification if it appears that the local board will not employ him. The Legislature has recognized that the teacher who has been unlawfully discharged but who has been restored to his position by court order should not be penalized by a nonperformance of a perfunctory act of application for renewal. ▮ The section particularly applies to a suspension ordered by the board upon charges which the board has failed to sustain.

▮ We conclude that section 13516.5 vindicates plaintiff's right to compensation whether or not he held "a valid certification document during the period of such unlawful removal." We proceed to explain that such compensation covers his rights in the board's retirement fund.

▮ Section 13439 provides that the employee "shall be paid *full salary* for the period of his suspension." (Italics added.) Contrary to the conclusion of law of the trial court, "full salary" includes the right to participate in retirement benefits.[7] (See *Benson* v. *City of Los Angeles* (1963) 60 Cal. 2d 355, 359 [33 Cal.Rptr. 257, 384 P.2d 649]; *Titus* v. *Lawndale School Dist.* (1958) 157 Cal.App.2d 822, 830 [322 P.2d 56].) ▮ Although plaintiff asserts an additional claim "for the loss of other fringe benefits such as medical benefits

[7]Of course, the amounts which would have been deducted for retirement contributions from plaintiff's salary should be deducted from his recovery. Hereinafter, in using the term "full salary including retirement benefits" we mean (1) an amount of money equal to the plaintiff's salary minus the deduction for retirement contributions, and (2) the right to participate in retirement benefits as if plaintiff had been continually enrolled in the program.

and other insurance plans for the board's employees" plaintiff proved no incurred medical expenditures or "losses" from "other insurance plans." Plaintiff is therefore not entitled to any recovery on these latter matters.

3. *The right to interest.*

Plaintiff is entitled to prejudgment interest as an element of damages on each salary payment as it accrued. Civil Code section 3287, which governs interest as an element of damages, reads in part: "Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day. . . . This section is applicable to recovery of damages and interest from any such debtor, including the State or any county, city, city and county, municipal corporation, public district, public agency, or any political subdivision of the State." (As amended Stats. 1955, ch. 1477, p. 2689, § 1; Stats. 1959, ch. 1735, p. 4186, § 1. In 1955 the Legislature applied the section to any "political subdivision of the State"; the 1959 amendment added the other named governmental bodies.)

This section authorizes prejudgment interest on salary payments from the date of accrual to the entry of judgment. (*Benson* v. *City of Los Angeles* (1963) 60 Cal.2d 355, 363-366 [33 Cal.Rptr. 257, 384 P.2d 649]; *W. F. Boardman Co.* v. *Petch* (1921) 186 Cal. 476, 484-485 [199 P. 1047]; *Canavan* v. *College of Osteopathic Physicians & Surgeons* (1946) 73 Cal.App.2d 511, 521 [166 P.2d 878].) We shall show that the board's three arguments against the payment of interest cannot stand and that, further, such interest may be obtained in this proceeding of mandamus.

The board first contends that section 13408 of the Education Code affords the suspended employee an alternative means of obtaining his salary by posting a bond, thus rendering Civil Code section 3287 inapplicable. Section 13408 of the Education Code, however, by its very terms does not apply to section 12955 of that code; plaintiff's suspension rests upon that section.

The board secondly contends that Civil Code section 3287, which was amended in 1959 to include rights against local governmental agencies, does not operate retroactively. The instant cause arose on February 5, 1962, when the board refused to reinstate plaintiff. In *Abbott* v. *City of Los Angeles*

(1958) 50 Cal.2d 438, 467 [326 P.2d 484], this court, in an action pending at the time of the effective date of the 1955 amendment, impliedly recognized the applicability of the 1955 amendment to payments which accrued before 1955.

The board finally argues that interest only accrues from the date when the board bore the legal duty to reinstate plaintiff because until that time the "right to recover" did not "vest" in him (Civ. Code, § 3287) and until then he was legally suspended. The Civil Code requires vesting, however, only in order to fix with sufficient certainty the time when the obligation accrues so that interest should not be awarded on an amount before it is due. Each salary payment in the instant case accrued on a date certain. Unless the suspension itself can be sustained and the board thus relieved of any obligation whatsoever, the salary payments became vested as of the dates they accrued. If plaintiff had not been wrongfully suspended, he would have obtained the benefit of the moneys paid as of those dates; he has thus lost the natural growth and productivity of the withheld salary in the form of interest.

Although some decisions suggest that interest cannot be recovered in a mandamus action (see *Sheehan* v. *Board of Police Comrs.* (1922) 188 Cal. 525 [206 P. 70]; *Nilsson* v. *State Personnel Board* (1939) 36 Cal.App.2d 186 [97 P.2d 843]; *Jorgensen* v. *Cranston* (1962) 211 Cal.App.2d 292, 300-303 [27 Cal.Rptr. 297]; *Gibbons & Reed Co.* v. *Department of Motor Vehicles* (1963) 220 Cal.App.2d 277, 287-291 [33 Cal.Rptr. 688, 927]; see discussion in *Benson* v. *City of Los Angeles* (1963) 60 Cal.2d 355, 363-365 [33 Cal.Rptr. 257, 384 P.2d 649]),[8] we hold that the present action in man-

---

[8]All of the above cited cases except *Nilsson* may be distinguished on the narrow ground that they involved mandamus actions against a trustee of a special fund. (*Sheehan, supra, Jorgensen, supra,* and *Gibbons & Reed, supra.* Thus in *Benson, supra,* a declaratory relief action in which we allowed interest on prejudgment damages, we distinguished these cases by stating: "Moreover the judges' retirement fund is a special trust fund and as such may not fall within the meaning of section 3287 (see *Jorgensen* v. *Cranston, supra,* 211 Cal.App.2d 292, 301), whereas it is well established that liability for pensions such as the instant one is not limited to any particular fund, but rather is a general obligation imposed by law upon the city." (60 Cal.2d at p. 365.) In the *Jorgensen* case itself, the court stated: "Our conclusion is that whatever [the Legislature's] intent may have been with reference to mandamus proceedings *involving contractual obligations of the state or its agencies payable out of the General Fund,* it does not apply to obli-

damus may support a judgment for interest since it involves recovery upon a general underlying monetary obligation.

The theory that recovery in a mandamus action could not under any circumstances include interest arose from assumptions which subsequent decisions and legislation have nullified. In the first place some courts refused to allow interest because they concluded that the judgment in those cases did not rest upon underlying monetary obligations and that mandate would issue only ''to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station.'' (Code Civ. Proc., § 1085.) For example, the court in *Sheehan* noted that ''petitioner . . . would not have been entitled to sue the board . . . to recover the amount due him on account of his said pension.'' (188 Cal. at p. 531.) Secondly, Civil Code section 3287, as it then read, foreclosed the recovery of interest against the state in any type of proceeding unless otherwise authorized.

At the present time, however, Civil Code section 3287, having been amended, allows for recovery of interest against a governmental entity. Furthermore, in the instant case, the board incurs liability for breach of its contractual monetary obligation (see Ed. Code, § 1011; *Benson* v. *City of Los Angeles* (1963) 60 Cal.2d 355 [33 Cal.Rptr. 257, 384 P.2d 649]). A mandamus action may include monetary damages for breach of contractual or tort obligations. (Code Civ. Proc., § 1095; *Cason* v. *Glass Bottle Blowers Assn.* (1951) 37 Cal. 2d 134, 142 [231 P.2d 6, 21 A.L.R.2d 1387].) Thus the abstract conception that interest could not be recoverable in any mandamus action, because the judgment could not be based on a monetary obligation, does not apply to this situation. In the instant case the judgment did rest upon a monetary obligation and we see no reason to foreclose the collection of interest because of the form of the action.

Indeed, we allowed postjudgment interest in *Cason* v. *Glass Bottle Blowers Assn., supra,* a mandamus action. The cases cited above have treated postjudgment and prejudgment interest alike (see *Nilsson* v. *State Personnel Board, supra,* at p. 189) and their force is thus vitiated by *Cason*. An action upon contract or for declaratory relief will lie to de-

gations payable out of the Judges' Retirement Fund.'' (Italics added.) 211 Cal.App.2d at p. 301.) The contractual obligation for payment of salary in the present case, as in *Benson, supra,* is a general obligation and thus does not fall within the ''special fund'' rule.

termine a plaintiff's right to wrongfully withheld payments and can properly include interest as an element of damages; plaintiff should surely recover interest in a mandamus action which covers damages based on an identical monetary obligation. Since mandate is the most expeditious and the most frequently used procedure of relief for persons improperly discharged from their positions, such persons should not be subjected to the loss of full restitution, by the denial of interest, merely because of the selection of this procedure for redress.[9]

### 4. *Mitigation of Damages.*

The trial court awarded back salary for the period December 8, 1953, to November 30, 1956. The board did not plead or prove that plaintiff earned any other compensation during that period or for the subsequent period of December 1, 1956, to the present. Plaintiff, on the other hand, failed to prove that he did not earn any offsetting compensation. In the absence of the board's showing that plaintiff received other compensation we do not see how the board can now properly assert that damages should be mitigated.

The cases have long held that the obligation to reimburse the teacher for the amount of salary wrongfully withheld may be mitigated by deducting earnings from other employment. (*Hancock* v. *Board of Education* (1903) 140 Cal. 554, 562 [74 P.44]; *Ramsay* v. *Rodgers* (1923) 60 Cal.App. 781, 785 [214 P. 261].) These cases also hold, however, that the burden of establishing mitigation rests with the defendant, and that in the absence of any proof of other earnings, a presumption arises that the amount of damages is the amount of withheld salary. As the early decision in *Rosenberger* v. *Pacific Coast Ry. Co.* (1896) 111 Cal. 313, 318 [43 P. 963] states: "The burden is on the defendant to show that he could by diligence have obtained employment elsewhere. Whatever compensation may have been received in such employment is also to be shown by the defendant in mitigation of damages; otherwise the damages will be measured by the salary or wages

---

[9]To the extent that language in *Sheehan* v. *Board of Police Comrs.*, *supra* (1922) 188 Cal. 525, *Nilsson* v. *State Personnel Board*, *supra* (1939) 36 Cal.App.2d 186, *Jorgensen* v. *Cranston*, *supra* (1962) 211 Cal.App.2d 292, and *Gibbon & Reed Co.* v. *Department of Motor Vehicles*, *supra* (1963) 220 Cal.App.2d 277, is inconsistent with the above analysis it is disapproved.

agreed to be paid.'' (To the same effect: *Ramsay* v. *Rodgers* (1923) 60 Cal.App. 781, 785 [214 P. 261].) These decisions do nothing more than apply to cases of wrongful discharge the general principle that the burden of showing mitigation of damages rests upon defendant. (*Steelduct Co.* v. *Henger-Seltzer Co.* (1945) 26 Cal.2d 634, 654 [160 P.2d 804]; *Hunter* v. *Croysdill* (1959) 169 Cal.App.2d 307, 318 [337 P.2d 174].)

The rule has uniformly been applied to the wrongful discharge of teachers; thus *Hancock* v. *Board of Education* (1903) 140 Cal. 554, 562 [74 P. 44] states: ''Under these circumstances, in the absence of any claim by the defendant that the plaintiff could have obtained, or did obtain, other employment, the presumption is, that he was damaged in the sum which he would have received under the contract if he had performed the duties required.'' (See also *La Rue* v. *Board of Trustees* (1940) 40 Cal.App.2d 287, 296 [104 P.2d 689].)

The board cites no cases holding otherwise as to teachers but submits decisions dealing with dismissals of civil service employees under the State Civil Service Act (*Stockton* v. *Department of Employment* (1944) 25 Cal.2d 264, 273-274 [153 P.2d 741]; *State Board of Equalization* v. *Superior Court* (1942) 20 Cal.2d 467, 475 [127 P.2d 4]; *Wiles* v. *State Personnel Board* (1942) 19 Cal.2d 344, 352 [121 P.2d 673]) and a case involving an analogous situation (*Rexstrew* v. *City of Huntington Park* (1942) 20 Cal.2d 630, 634 [128 P.2d 23]). These decisions, we believe, do not apply to the instant case.

The decisions involve the statutory requirements of the State Civil Service Act, which, as amended in 1939, declared that the State Personnel Board ''shall in rendering its decision, *authorize the payment of salary* for the period of suspension if it finds that the charges made were untrue.'' (Subd. (d) of § 173 of the State Civil Service Act as added in 1939, Stats. 1939, p. 2514.) (Italics added.) Thus the State Personnel Board exercises the authority to determine the ''salary'' to be paid to the discharged civil servant. As the decision in *Stockton* v. *Department of Employment, supra,* recognizes, the cases have held that the civil service employee is ''to recover the amount of his accrued salary during the period he is prevented from performing his duties, less the amount he has received from private or public employment

during that period'' (p. 273).[10] The statute designates the State Personnel Board as the agency responsible for the reinstatement of civil service employees and for the determination of the compensatory amount to be paid them. Its determination controls unless the discharged civil servant can present a contrary showing, but, of course, the burden rests upon him to do so. Thus, in these cases the court did no more than *interpret* the meaning and effect of the personnel board's authorization.

In the instant case we do not interpret any authorization of payment of salary by the involved agency; no such authorization exists; the statutory procedure here contains no direction to a supervisory board, such as the personnel board, for ordering the board to reinstate a discharged teacher or for declaring that it "shall in rendering its decision, authorize payment of salary."[11] In the absence of such special statutory procedures, we conclude that the general rule should prevail, and that the burden of mitigation should be borne by the defendant.

The imposition of the burden on the board rests upon sound considerations. The board can call the teacher under Code of Civil Procedure section 2055 as an adverse witness to inquire as to his interim employment; it can utilize discovery procedures for the same purpose. Since the board here undertakes to limit its liability and since it additionally possesses the techniques for ascertaining the facts, the board should, as to this issue, bear the burden of proof.[12]

We hold that although the trial court awarded plaintiff his salary, without mitigation of amounts otherwise earned,

---

[10]This method of computation, developed by the cases, has now been incorporated into statute. Government Code section 19584, subdivision (b) provides that the State Personnel Board shall deduct from the amount accrued "Any compensation employee earned or might reasonably have earned in private or public employment during the period of suspension."

[11]*Rexstrew* v. *City of Huntington Park, supra* (1942) 20 Cal.2d 630, likewise involved civil service employees and an apparently comparable civil service system.

[12]The usual reasons for requiring a party interested in obtaining a certain result to produce and prove the facts requisite to that result similarly apply in the instant situation. Not all earnings would be deductible; for example, earnings from night or weekend work, which would not have been inconsistent with school employment, are not to be deducted. (*Beseman* v. *Remy* (1958) 160 Cal.App.2d 437, 445 [325 P.2d 578].) Hence the burden should rest upon the board to prove which particular earnings, if any, qualify for mitigation.

for the period from December 8, 1953, to November 30, 1956, the judgment should thus have covered the entire period of plaintiff's suspension.

5. *Availability of Funds for Payment.*

We find no merit in the board's contentions that plaintiff did not allege and prove the availability of funds from which the board could pay the sought amounts and that the cases require such a showing in a mandamus action. (*Tevis* v. *City & County of San Francisco* (1954) 43 Cal.2d 190, 200 [272 P.2d 757], and *San Bernardino Fire & Police Protective League* v. *City of San Bernardino* (1962) 199 Cal.App.2d 401, 417 [18 Cal.Rptr. 757].) This rule does not apply to actions against school districts for wrongful dismissal. (*La Rue* v. *Board of Trustees* (1940) 40 Cal.App.2d 287, 296 [104 P.2d 689]; accord, *Lotts* v. *Board of Park Comrs.* (1936) 13 Cal.App.2d 625, 635 [57 P.2d 215]; see also Ed. Code, § 1011 [liability of school board for debts and contracts]; cf. *Kinnear* v. *City & County of San Francisco* (1964) *ante,* pp. 341, 343-344 [38 Cal.Rptr. 631, 392 P.2d 391] [above rule did not apply to reinstatement of wrongfully discharged city employees].)

We conclude as to the whole matter that the statutory scheme did not design that dormant and unproved charges should forfeit the teacher's right to pursue his profession or should cause the protracted delay that has occurred here. A decade of debate should be long enough to define rights; the day for final settlement has come. To that end, and in accordance with the analysis we have set forth in this opinion, we order the reinstatement of plaintiff; the payment of salary that plaintiff would have earned if he had been employed from the date of dismissal to the date of his reinstatement minus deductions which would have been made for the retirement contributions; interest on each such payment from the time it would have been paid; and participation in retirement benefits as if plaintiff had been continually employed. We deny all other claims of plaintiff. Judgment affirmed in part and reversed in part and remanded to the trial court for proceedings consistent with the opinion of this court. Plaintiff shall recover his costs on the appeals.

Gibson, C. J., Traynor, J., Peters, J., and Peek, J., concurred.

McCOMB, J.—I dissent. I would affirm the portion of the judgment in favor of defendant board. In my opinion, plaintiff was guilty of laches, for the following reasons:

*First*: By choice, he let his credential expire on November 30, 1956, apparently for the purpose of rendering moot the board's charges against him.

*Second*: After letting his credential expire, he delayed 3½ years (until May 30, 1960) before applying for a new one, this period blanketing the three-year period (January 27, 1957, to January 27, 1960) when, but for the expiration of his credential, the board could have prosecuted the charges against him.

*Third*: In that three-year period, plaintiff could, under section 13416 of the Education Code, have brought action 434449 (the action filed by the board against him) to trial and obtained an adjudication of the same rights (reinstatement and back salary) which he now seeks to establish, but he did nothing.

*Fourth*: He delayed another four months (until May 30, 1960) before obtaining a new credential.

*Fifth*: He delayed almost another year (until April 18, 1961) before moving to dismiss action 434449.

*Sixth*: He delayed more than five years after the expiration of his credential before bringing the present action (November 30, 1956, to February 16, 1962).

*Seventh*: During this period the board was paying the salary of another teacher in plaintiff's place. ("It is presumed that where one has been dismissed from an active position in the public service, someone else has been chosen to take his place." [*Wolstenholme* v. *City of Oakland,* 54 Cal.2d 48, 50 [2] (4 Cal.Rptr. 153, 351 P.2d 321), cert. denied, 364 U.S. 865 (81 S.Ct. 110, 5 L.Ed.2d 88).]) Meanwhile, plaintiff was running up a claim to back salary and damages totaling to date $132,476 ($82,476 salary and $50,000 general damages), plus interest and fringe benefits in an undisclosed amount. (Only $18,915 of plaintiff's salary claim is for the period prior to expiration of his credential.)

The rule of laches is founded in sound policy, and its application prevents inequity and injustice. (*Callender* v. *County of San Diego,* 161 Cal.App.2d 481, 484 [327 P.2d 74].) Rights should be promptly asserted to protect against dual

payment for the same service. (*Hermanson* v. *Board of Pension Comrs.*, 219 Cal. 622, 625 [28 P.2d 21]; *Callender* v. *County of San Diego, supra,* 161 Cal.App.2d 481, 484; *Donovan* v. *Board of Police Comrs.*, 32 Cal.App. 392, 399 et seq. [163 P. 69]; *Harby* v. *Board of Education,* 2 Cal.App. 418, 420 [83 P.2d 1081].)

In *United States* ex rel. *Arant* v. *Lane,* 249 U.S. 367, 372 [39 S.Ct. 293, 63 L.Ed. 650], it is stated: ''When a public official is unlawfully removed from office, whether from disregard of the law by his superior or from mistake as to the facts of his case, obvious considerations of public policy make it of first importance that he should promptly take the action requisite to effectively assert his rights, to the end that if his contention be justified the Government service may be disturbed as little as possible and that two salaries shall not be paid for a single service.''

In *Wolstenholme* v. *City of Oakland, supra,* 54 Cal.2d 48, 50 [1], we said: ''Public policy requires that an employee of a public body who claims to have been improperly or illegally discharged must act with the utmost diligence in asserting his rights.'' At page 51 (54 Cal.2d) we referred to cases holding that delays of 9, 12, 15, 16, and 18 months were incompatible with the utmost diligence with which an employee of a public body must assert his rights. The delay held to constitute laches in *Wolstenholme* was 19 months.

To similar effect, and reversing judgments because of laches, are *Hayman* v. *City of Los Angeles,* 17 Cal.App.2d 674, 680-681 [62 P.2d 1047] (9 months' delay), and *Kramer* v. *Board of Police Comrs.*, 39 Cal.App. 396, 400-401 [179 P. 216] (4 years, 9 months' delay). (See also *Doan* v. *City of Long Beach,* 130 Cal.App. 526, 528 [2] [20 P.2d 777], affirming a judgment based on an order sustaining a demurrer where the delay was 18 months.)

The prompt action which plaintiff, in the exercise of diligence, should have taken to assert his rights was to (1) renew his credential instead of letting it expire, thus keeping alive the charges against him, (2) have action 434449 retried instead of waiting more than four years (January 27, 1957, to April 18, 1961) to move for its dismissal for want of prosecution, (3) apply promptly for a new credential after he let his old one expire, instead of waiting 3½ years (November 30, 1956, to May 30, 1960), and (4) promptly after November 30, 1956, seek a dismissal of action 434449 and bring

this action, instead of waiting until February 16, 1962, to do so.

Under the circumstances, plaintiff did not act with "the utmost," or any, diligence.

Schauer, J., concurred.

The petition of the defendants and appellants for a rehearing was denied September 10, 1964. Schauer, J., and McComb, J., were of the opinion that the petition should be granted.