SAMUEL MASTROBATTISTA, PLAINTIFF-APPELLANT, v. ESSEX COUNTY PARK COMMISSION, DEFENDANT-RESPONDENT.

FRANK W. MILBAUER, Jr., PLAINTIFF-APPELLANT, v. ESSEX COUNTY PARK COMMISSION, DEFENDANT-RESPONDENT.

Argued October 26, 1965—Decided December 20, 1965.

140

*Mr. Thomas E. Durkin, Jr.* argued the cause for the appellants.

*Mr. John J. McDonough* argued the cause for the respondent (*Messrs. Darby & McDonough,* attorneys).

*Mrs. Marilyn Loftus Schauer,* Deputy Attorney General, argued the cause for the Civil Service Commission, *amicus curiae* (*Mr. Arthur J. Sills,* Attorney General of New Jersey, attorney).

The opinion of the court was delivered by

JACOBS, J. The appellants Mastrobattista and Milbauer are Essex County Park patrolmen who, after having been suspended and dismissed on departmental charges, were later restored to duty by the Civil Service Commission which found them not guilty. The opinions and orders of the Civil Service Commission made no mention of back pay and although Mastrobattista later requested that the Commission reopen his matter with respect to that issue, his request was denied, apparently without any accompanying opinion. Thereafter each of the appellants filed a separate complaint in the Law Division against the Park Commission alleging that no salary during the period of suspension and dismissal was paid to him and claiming that he was entitled to his back salary in full, plus interest and costs. The complaints were consolidated for trial, the facts were stipulated, and arguments on the stipulated facts were duly presented.

The trial court concluded that under *R. S.* 11:15–6 and *Miele v. McGuire,* 31 *N. J.* 339 (1960), the appellants (both were in the classified civil service (*R. S.* 11:22–3)) were entitled to their back pay less the sums earned by them in other employment during their suspensions and dismissals. On appeal, the Appellate Division reversed and remanded for the entry of judgment in favor of the Park Commission. *Mastrobattista v. Essex County Park Comm.,* 85 *N. J. Super.* 283 (*App. Div.* 1964). The Appellate Division's approach

was that, since the appellants were the holders of "offices" rather than "positions or employments," they were not governed by *R. S.* 11:15–6 or *Miele v. McGuire, supra*, but were subject to the common law principle that a public officer could not recover any back pay for the period of suspension or removal, notwithstanding his later restoration to duty. See *DeMarco v. Bd. of Chosen Freeholders of Bergen County*, 21 *N. J.* 136 (1956); *Winne v. Bergen County*, 21 *N. J.* 311 (1956); see also, Glasser, "A New Jersey Municipal Law Mystery: What is a 'Public Office?'," 6 *Rutgers L. Rev.* 503 (1952); Note, "The Right of New Jersey's Governmental Officers and Employees to Recover for Back Pay When Illegally Dismissed or Suspended," 15 *Rutgers L. Rev.* 516 (1961). We granted certification on the appellants' application. 44 *N. J.* 581 (1965).

The common law cases were discussed in *DeMarco* (21 *N. J.* 136) and need not be detailed here. They drew distinctions between offices, positions and employments which were described in *Miele* as "somewhat obscure and rather unfortunate" (31 *N. J.*, at *p.* 347) and by *Glasser* as "seriously lacking in realistic usefulness." 6 *Rutgers L. Rev.*, at *p.* 503. They led to disparate treatment among comparables, now difficult to justify. Thus in *Ross v. Freeholders of Hudson*, 90 *N. J. L.* 522 (*E. & A.* 1917), the court held that a guard in the Hudson County jail who had been restored to duty after a departmental dismissal could recover his back pay, less mitigation for earnings in other employment during the period of his dismissal; and in *Miele* the holding in *Ross* was applied to allow recovery of back pay, less mitigation, by a river inspector of the Passaic Valley Sewerage Commissioners. 31 *N. J.*, at *p.* 352. The plaintiffs in *Ross* and *Miele* were viewed as the holders of positions or employments rather than offices. However, in instances where the litigants before the courts were viewed as the holders of offices, they were denied all back pay though the underlying facts and the equitable considerations were not distinguishable in any significant aspects from those in *Ross* and *Miele*. See, *e.g., Gobac v.*

*Davis,* 62 *N. J. Super.* 148 (*Law Div.* 1960), which dealt with an Alcoholic Beverage Control investigator; *Hillel v. Edgewater,* 106 *N. J. L.* 481 (*E. & A.* 1930), and *Strohmeyer v. Little Ferry,* 136 *N. J. L.* 485 (*E. & A.* 1948), which dealt with municipal police officers; but *cf. N. J. S. A.* 40 :46– 34; *McGrath v. Jersey City,* 38 *N. J.* 31 (1962); *Graham v. Asbury Park,* 37 *N. J.* 166 (1962).

Current concepts of fair play in employment relationships suggest that persons in the public service who have been suspended or removed on charges later determined to be unfounded should be made whole insofar as possible; they should be entitled not only to restoration of duties but should also suffer no loss in their earnings. This is the course taken by many statutes and decisions in the federal sphere and in our sister states (see *Vitarelli v. United States,* 279 *F. 2d* 878, 150 *Ct. Cl.* 59 (*Ct. Cl.* 1960); *Mass v. Board of Education,* 61 *Cal. 2d* 612, 39 *Cal. Rptr.* 739, 394 *P. 2d* 579 (1964); *McKenna v. Commissioner of Mental Health,* 347 *Mass.* 674, 199 *N. E. 2d* 686 (1964); *People ex rel. Bourne v. Johnson,* 48 *Ill. App. 2d* 307, 199 *N. E. 2d* 68 (1964), aff'd 32 *Ill. 2d* 324, 205 *N. E. 2d* 470 (1965); see also the references in *McGrath v. Jersey City, supra,* 38 *N. J.,* at *p.* 32); although these out-of-state pronouncements may leave room for some divergence of opinion as to the applicable extent of the doctrine of mitigation (*Lower Merion Township v. Turkelson,* 403 *Pa.* 72, 169 *A. 2d* 97 (1961)), they afford no basis for the denial of back pay on any technical distinctions between offices, positions and employments.

We have on many occasions recommended that the Legislature deal further with the subject. In *DeMarco* we noted that it might well adopt a comprehensive enactment providing "compensatory protection for all public officers and employees who are suspended pending trial and are later acquitted or otherwise vindicated"; and we pointed out that in connection with such an enactment, consideration should be given "to the need for appropriate provisions which would safeguard the public against a claim for an unduly long period of suspension

where the officer or employee has failed to make reasonable efforts to obtain expeditious determination of the charges against him and against excessive compensation where he has had fair opportunity to engage in gainful private employment during the period of his suspension." 21 *N. J.*, at *pp.* 147–148. Shortly after *DeMarco* was decided, the Senate and Assembly passed a bill which allowed back pay to all public employees, including the holders of State, county and municipal offices and positions, but it was vetoed by the Governor largely because it failed to provide for mitigation. No subsequent legislation has been enacted though the recommendation therefor has been repeated on several occasions. See *Miele v. McGuire, supra,* 31 *N. J.*, at *p.* 351; *Graham v. Asbury Park, supra,* 37 *N. J.*, at *p.* 167; *McGrath v. Jersey City, supra,* 38 *N. J.* 31.

It has been suggested in academic circles that this Court should now discard the common law differentiation between offices, positions and employments. See Note, *supra,* 15 *Rutgers L. Rev.*, at *p.* 522. In many fields of private law we have readily remolded common law principles to meet current concepts and needs. See, *e.g., Smith v. Brennan,* 31 *N. J.* 353, 361–362 (1960); *Collopy v. Newark Eye and Ear Infirmary,* 27 *N. J.* 29, 41–48 (1958). We have been reluctant to do so in this field since it deals with public employment relationships and concerns public rather than private funds. Nevertheless, there is no question as to our authority in the premises and if called upon we might now be prepared to re-examine the long line of common law cases discussed in *DeMarco.* The appellants have not urged any such re-examination and, in any event, it need not be undertaken here since, as we view the Civil Service Act and particularly *R. S.* 11:15–6 and *N. J. S. A.* 11:2A–1, the Legislature has empowered the Civil Service Commission to deal effectively with the matter of back pay to all persons in the classified civil service who are restored to duty by order of the Commission, whether they be deemed the holders of offices, positions or employments.

██ The objective of the Civil Service Act is to obtain an efficient public service by merit appointments with broad tenure protection to all appointees in the classified service. See *Loboda v. Clark Tp.*, 40 *N. J.* 424, 434 (1963). The classified service includes civil service personnel generally except policy makers such as elected officials and department heads and other groups specifically listed within the unclassified service. See *R. S.* 11:4–3, 4; *R. S.* 11:22–1, 2, 3; *Campbell v. Dept. of Civil Service*, 39 *N. J.* 556, 574–576 (1963). In the light of the Act's objective, terms and administration, the common law distinctions would clearly appear to have no relevancy to the classified service; we are satisfied that the Legislature never intended to carry them over into that service. Thus the list of definitions in *R. S.* 11:3–1 contains no definition of "office" but intermingles the common law terminology by defining "position" to mean "an office or place of employment in the classified service of such a nature that the duties and responsibilities pertaining thereto are exercised by one person." Rule 64(14) of the Civil Service Commission defines "position" in similar language and Rule 64(7) defines "employee" to mean "a person who is legally an incumbent of a position in the classified service or who is on authorized leave of absence and whose position is held for him pending his return."

*R. S.* 11:15–1 through 6 deal with suspensions, demotions, and removals, and appeals therefrom, and *R. S.* 11:15–6 grants to the Commission very broad powers on appeal which, by the terms of *N. J. S. A.* 11:2A–1, are made generally applicable to county and municipal as well as State employees. *Cf. Town of West New York v. Bock*, 38 *N. J.* 500, 518 (1962). Specifically, *R. S.* 11:15–6 sets forth that after investigation, inquiry or hearing, the Commission shall render a decision which "shall state whether the removal of the employee is approved, or whether he is to be restored to his position without loss of pay, transferred to another position in the same class, fined, demoted, suspended without pay or with reduced pay, for a period not exceeding six months, or

to be reprimanded or otherwise dealt with." *Cf. Walklet v. Civil Service Commission*, 114 *N. J. L.* 582 (*Sup. Ct.* 1935).

The Chief Examiner and Secretary of the Department of Civil Service verifies that the Commission has through the years "construed the word 'employee' as used throughout Title 11 and specifically in *N. J. S. A.* 11:2A–1 and *R. S.* 11:15–1 through 6, to be applicable to all persons in the classified service"; has not distinguished between officers and employees because it considers that the objective of the Civil Service Act is to afford protection to "all members of the classified service"; has granted "hearings to policemen in municipalities, counties and school districts operating under Title 11 from actions of the appointing authorities removing, suspending, demoting, fining or otherwise reducing such policemen"; and "has in some instances specifically provided in its decisions for the awarding of back pay to municipal and county employees, including policemen, during periods of illegal suspension and removal by virtue of the authority vested in it under Title 11." From the foregoing it is apparent that *R. S.* 11:15–6 and *N. J. S. A.* 11:2A–1 have been regularly applied by the Civil Service Commission to classified service personnel such as the appellants here; in construing the Act we are of course at liberty to consider this long-standing practical administrative interpretation. See *Pringle v. N. J. Dept. of Civil Service*, 45 *N. J.* 329, 333 (1965) ; *State Department of Civil Service v. Clark*, 15 *N. J.* 334, 341 (1954).

In reaching the conclusion that *R. S.* 11:15–6, along with *N. J. S. A.* 11:2A–1, did not extend to county park patrolmen, the Appellate Division made no reference to the contrary administrative interpretation but placed reliance on "a rule of strict statutory construction" (85 *N. J. Super.*, at *p.* 292) and on the fact that *R. S.* 11:15–6 and *N. J. S. A.* 11:2A–1 referred specifically to an "employee" whereas cognate provisions contained references to an "officer, clerk or employee" (*R. S.* 11:22–38) and to a person employed in an "office, position or employment" (*N. J. S. A.* 11:22–11.1).

This additional verbiage may fairly be viewed as having been included out of an excess of caution since throughout Title 11 there are many references to "employees" and "positions" which are obviously applicable to all persons in the classified service. The rule of strict statutory construction referred to by the Appellate Division, whatever lingering effects it may have elsewhere (*cf. Llewellyn, The Common Law Tradition* 521–522 (1960)), is not to be invoked when construing provisions of the Civil Service Act such as *R. S.* 11:15–6 and *N. J. S. A.* 11:2A–1; our courts have repeatedly pointed out that the Civil Service Act is entitled to be construed liberally towards the attainment of merit appointments and broad tenure protection to those appointed. See *Loboda v. Clark Tp., supra,* 40 *N. J.,* at *p.* 434; *Connors v. City of Bayonne,* 36 *N. J. Super.* 390, 396 (*App. Div.*), certif. denied, 19 *N. J.* 362 (1955); *Scancarella v. Dept. of Civil Service,* 24 *N. J. Super.* 65, 70 (*App. Div.* 1952); *Sullivan v. McOsker,* 84 *N. J. L.* 380, 385 (*E. & A.* 1913).

It may be noted that none of the back pay cases cited by the Appellate Division or the parties dealt with *R. S.* 11:15–6 or its predecessor (*L.* 1930, *c.* 176, *par.* 34) except *Walklet v. Civil Service Commission, supra,* 114 *N. J. L.* 582. There, several persons were removed from their positions in the State Highway Department and, on appeal, were reinstated by the Civil Service Commission which held that their rights as members of the classified service were violated. On *certiorari,* the only question raised was whether their reinstatements should have included back pay to the time of removal. The former Supreme Court held that such back pay should have been included in view of the terms of *L.* 1930, *c.* 176, *par.* 34. The court's opinion did not discuss mitigation for earnings elsewhere although it did cite *Ross v. Freeholders of Hudson, supra,* 90 *N. J. L.* 522, where the doctrine of mitigation was held applicable. Our reading of *R. S.* 11:15–6 satisfies us that while, as *Walklet* indicates, the restoration to duty is ordinarily to be accompanied by back pay, the Commission has ample authority to invoke the doctrine of mitiga-

tion; it must be borne in mind that the concluding phrase "otherwise dealt with" in *R. S.* 11:15–6 evidences a clear legislative purpose that the Commission's powers shall extend beyond the prior specific enumerations.

It is true, as the appellants point out, that in *McGrath v. Jersey City, supra,* 38 *N. J.* 31, a *per curiam* was recently filed sustaining a Law Division judgment granting back pay without mitigation to a member of the classified service. The plaintiff's claim there was rested on *N. J. S. A.* 40:46–34, which deals solely with municipal personnel and is not applicable to county park personnel such as the appellants here. See *Miele v. McGuire, supra,* 31 *N. J.,* at *p.* 348. Nowhere in the Law Division or in this Court was any issue raised or passed upon in *McGrath* as to the Civil Service Commission's power to invoke the doctrine of mitigation or as to the effect which *R. S.* 11:15–6 may have on *N. J. S. A.* 40:46–34 when dealing with civil service personnel; nor was any question raised as to the plaintiff's failure to exhaust his administrative remedies and seek relief before the Appellate Division under *R. R.* 4:88–8 rather than in the Law Division. It may well be that, if these matters had been presented, the result would have been a remand to the Commission to provide for back pay less appropriate mitigation; and so far as the plaintiff's claim for interest was concerned, the Commission could presumably have exercised a discretionary power of equitable nature comparable to that referred to in the precedents cited in this Court's opinion, 38 *N. J.,* at *pp.* 32–33. See also *Miele v. McGuire, supra,* 31 *N. J.,* at *p.* 352. However, since *McGrath* is admittedly inapplicable here, full reconsideration of its holding and the scope of *N. J. S. A.* 40:46–34 may be deferred until a suitable case is presented.

In *Lowenstein v. Newark Bd. of Education,* 35 *N. J.* 94, 123–124 (1961), Justice Hall suggested that the doctrine of mitigation might be invoked upon the restoration to duty of a schoolteacher found on appeal to have been improperly suspended or dismissed; and in *Mullen v. Bd. of Ed. of Jefferson Tp.,* 81 *N. J. Super.* 151 (*App. Div.* 1963), the doctrine

was applied to preclude double compensation to a dismissed school superintendent who prevailed on his appeal to the Commissioner of Education. It should be pointed out that *N. J. S. A.* 18:5–49.1, under which *Mullen* was decided, contains a provision for the payment of compensation for the period of illegal suspension or dismissal but, like *R. S.* 11:15–6, contains no specific reference to the doctrine of mitigation. In holding the doctrine to be applicable, Judge Goldmann concluded his opinion with the following:

"The facts of this case vividly illustrate the unreasonable result of construing N. J. S. A. 18:5–49.1 so as to preclude mitigation. Appellant's salary at the time he was illegally dismissed by the township board of education was $10,000 a year. What he is asking this court to do is to award him, in addition to the salary for the period from July 1 to September 14, 1960, that portion of his annual salary as superintendent of schools for the period September 15, 1960 to April 28, 1961—some 7½ months, amounting to about $6,250. He asks this for work never performed for respondent board, and for a period of time when he was gainfully employed at $14,000 a year as district principal at Elmsford, N. Y.—all in the face of his admission before the State Board of Education that he did not intend to return to his position of superintendent of schools of Jefferson Township. To allow appellant 'compensation' for the period when he was working at his new position at a higher salary would be to give him a windfall. Such an interpretation of N. J. S. A. 18:5–49.1 is unreasonable and would be inconsistent with the principle that the Legislature must always be presumed to favor the public interest as against any private one." 81 *N. J. Super.*, at *p.* 160.

■■ The Civil Service Commission urges that within the authority conferred upon it by *R. S.* 11:15–6 it has power not only to require mitigation but also to deny back pay where the special circumstances justly call for such action; and illustratively, it suggests a case where the employee has unduly extended the period of suspension or removal by failing "to make reasonable efforts to obtain expeditious determination of the charges against him" (*DeMarco, supra,* 21 *N. J.,* at *pp.* 147–148). In such an instance a denial of back pay for that period of delay which is the employee's responsibility would appear to be clearly within the sweep of the Commission's authority. In the matter at hand, we do not know

whether there was any undue delay on the part of the appellants, nor do we know what amount of back pay, less mitigation, would be called for to insure that, while the appellants do not profit (*cf. Mullen, supra,* 81 *N. J. Super.,* at 160), they do not suffer any loss in earnings; in this latter connection it would be equitable that consideration be given to the fees and expenses necessarily incurred by the appellants in obtaining vindication. *Cf. Lowenstein v. Newark Bd. of Education, supra,* 35 *N. J.,* at *p.* 124.

When the Civil Service Commission ordered that the appellants be restored to duty it should have dealt explicitly with the issues of back pay and mitigation. Its orders were silent as to those matters and it apparently filed no opinion when it denied the request for reopening. Being dissatisfied with the Commission's failure to provide for back pay in its orders restoring them to duty, the appellants should have sought review by appeal to the Appellate Division under *R. R.* 4:88–8; that court would presumably have remanded the matter to the Commission so that it could deliberately exercise its administrative judgment, setting forth its reasons in detail so that the reviewing court would be sufficiently advised as to the basis for the administrative action. See *Abbotts Dairies v. Armstrong,* 14 *N. J.* 319, 332–333 (1954); *cf. Bailey v. Council of the Div. of Planning, etc., State of N. J.,* 22 *N. J.* 366, 374–375 (1956). Instead of appealing under *R. R.* 4:88–8, the appellants filed their complaints in the Law Division which handed down its decision without the benefit of an expression by the administrative agency entrusted with the primary responsibility in the matter. While the appellants may have pursued the wrong procedural avenue, they should not now be deprived of a just determination in the proper forum. See *Central R. R. Co. v. Neeld,* 26 *N. J.* 172, 184, *certiorari* denied 357 *U. S.* 928, 78 *S. Ct.* 1373, 2 *L. Ed. 2d* 1371 (1958); *Roadway Express, Inc. v. Kingsley,* 37 *N. J.* 136, 142 (1962). The proceedings will therefore be remanded to the Civil Service Commission so that it may consider and determine the issues of back pay

and mitigation in accordance with the principles set forth earlier in this opinion; if any party is aggrieved by the action taken by the Commission, judicial review may be obtained under *R. R.* 4:88–8.

Reversed and Remanded.

*For reversal and remandment*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.