ELEANOR G. RYAN *vs.* SUPERINTENDENT OF SCHOOLS OF
QUINCY & others.

Norfolk. January 5, 1978. — March 16, 1978.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & ABRAMS, JJ.

*School and School Committee. Damages,* Mitigation of damages.

The general principle of mitigation of damages was applicable to an ac-
tion of a teacher seeking both reinstatement under G. L. c. 71, § 42,
and a determination of tenure status under § 41. [671-673]

In an action by a school teacher to recover compensation for her unlawful
dismissal by a school committee, subsidiary findings by a master war-
ranted the judge's conclusion that the defendants did not sustain their
burden of proving that the teacher would have been reasonably likely
to obtain a comparable position if she had applied for any and that the
teacher was therefore entitled to receive as compensation the amount
of wages she would have received if she had not been unlawfully dis-
missed. [673-676]

CONTRACT. Writ in the Superior Court dated August 3,
1973.

The case was heard by *J. P. Sullivan,* J., on a master's
report.

The Supreme Judicial Court granted a request for direct
appellate review.

*James A. Toomey* for the defendants.
*John A. Sullivan* for the plaintiff.

ABRAMS, J. In June, 1973, we decided that the plaintiff
Eleanor G. Ryan had attained tenure and that her dismissal
by the defendants without compliance with G. L. c. 71,
§ 42, was unlawful. The school committee was therefore
ordered to reinstate her. *Ryan* v. *Superintendent of Schools
of Quincy,* 363 Mass. 731 (1973). We specifically stated that
the record was "not sufficient to permit a decision on the
right of the petitioner to compensation for the period since
the expiration of her last annual contract. . . ." *Ryan, supra*

at 740. In this action, Ryan seeks to recover compensation from the defendants, the members of the school committee of Quincy and the superintendent of schools, for damages sustained during the period from September, 1968, to September, 1973.

The case was referred to a master,[1] facts not to be final. The master concluded that the mitigation doctrine was applicable to Ryan and that had she made reasonable and diligent efforts to seek a teaching position for the school years 1969-1973 it was likely that she would have obtained such a position. He thus reduced her damages by the amount which she would have received from such employment.

The plaintiff filed a motion to review the evidence, a claim of jury trial, and a motion to strike the master's report. The defendants filed objections to the master's report. The parties then agreed that the case should be decided by the judge jury waived on the basis of the master's report, the entire testimony taken before the master, the objections of the parties to the master's report, and the memoranda and argument of counsel. The trial judge concluded that it would have been virtually impossible for Ryan to obtain employment of a similar nature and awarded as damages all Ryan's lost wages for the school years 1968-1973. Thus the judge drew an ultimate conclusion different from the one drawn by the master. For the reasons stated in this opinion, we decide that the trial judge reached the correct result.

1. *Applicability of mitigation doctrine.* The plaintiff-appellee first argues in support of the result reached by the judge that the rule of mitigation of damages is not applicable to an action of a tenured teacher seeking compensation in the form of lost wages under G. L. c. 71, § 43A, when the teacher seeks not only reinstatement under G. L. c. 71, § 42,

---

[1] Under the procedural rules applicable at the time of the appointment the case was referred to an "auditor." Former Rule 88 of the Superior Court (1954). Under Mass. R. Civ. P. 53 (a), 365 Mass. 817 (1974), those who were previously called auditors are now included within the term "masters."

but also a determination of his or her tenure status under G. L. c. 71, § 41. We disagree.

The general rule is that "[w]here one is under contract for personal service, and is discharged, it becomes his duty to dispose of his time in a reasonable way, so as to obtain as large compensation as possible, and to use honest, earnest and intelligent efforts to this end." *Maynard* v. *Royal Worcester Corset Co.*, 200 Mass. 1, 6 (1908). *McKenna* v. *Commissioner of Mental Health*, 347 Mass. 674, 675-676 (1964). This general principle is applicable to public employees who are reinstated after having been unlawfully discharged. *Police Comm'r of Boston* v. *Ciccolo*, 356 Mass. 555 (1969). *McKenna* v. *Commissioner of Mental Health, supra*. Moreover, G. L. c. 71, § 43A,[2] the statute under which the plaintiff claims damages, has been interpreted as requiring mitigation. *Black* v. *School Comm. of Malden*, 365 Mass. 197, 212 (1974). See *Police Comm'r of Boston* v. *Ciccolo, supra* at 559.

The plaintiff's argument that the principle of mitigation of damages should not apply in this case thus reduces itself to the contention that the seeking of a determination of tenure status in connection with seeking reinstatement should preclude the application of the mitigation principle. However, we see no reason why the general rule of mitigation should not be applicable when this additional factor is present. A request for a determination of tenure status adds nothing of sufficient substance to distinguish a case in which both reinstatement and a tenure determination are sought from one in which only reinstatement is sought. In the present case, the determination of tenure status was a prerequisite to a finding that the plaintiff was unlawfully discharged and thus entitled to reinstatement. If tenure status is disputed in a case in which it is not a prerequisite to a

---

[2] General Laws c. 71, § 43A, as appearing in St. 1975, c. 337, provides in part: "If the court finds such action [dismissal of a teacher serving at discretion] was justifiable, the action of the school committee shall be affirmed; otherwise, it shall be reversed and the appellant shall be reinstated to the position without loss of compensation."

finding of unlawful discharge, the determination whether a plaintiff had attained tenure would affect only the nature of his position on reinstatement. Cf. *Police Comm'r of Boston v. Ciccolo, supra.* We conclude that the general principle of mitigation of damages is applicable when a plaintiff seeks both reinstatement under G. L. c. 71, § 42, and a determination of tenure status under G. L. c. 71, § 41.[3] See *Woodward v. School Comm. of Sharon,* 5 Mass. App. Ct. 84 (1977).

2. *Application of mitigation doctrine.* The burden of proof on the issue of mitigation of damages is on the employer. *McKenna v. Commissioner of Mental Health,* 347 Mass. 674, 677 (1964). "A former employer meets its burden of proof of 'mitigation of damages' if the former employer proves that (a) one or more discoverable opportunities for comparable employment were available in a location as convenient as, or more convenient than, the place of former employment, (b) the improperly discharged employee unreasonably made no attempt to apply for any such job, and (c) it was reasonably likely that the former employee would obtain one of those comparable jobs." *Black v. School Comm. of Malden,* 369 Mass. 657, 661-662 (1976).

When a master sets forth the subsidiary facts on which he based his ultimate conclusion, the trial court and the reviewing court have the duty to draw their own inferences

---

[3] The plaintiff argues that, if unlawfully discharged plaintiffs are required to seek other employment, their right to a judicial determination of their tenure status would be jeopardized. However, since we have concluded that mitigation is necessary, no prejudice to tenure claims can result from plaintiffs' seeking or obtaining alternative employment. The plaintiff also argues that if she were required to seek other employment she would be placed in a materially worsened position since, having jeopardized her right to reinstatement, she would be required to remain in the alternative position which would have been nontenured and lower paying. However, as noted, her attempts to mitigate damages would not preclude her reinstatement. The salary and incidents of the alternative employment are irrelevant to whether mitigation is necessary; rather they can be considered in the final calculation of damages in which the amount a plaintiff could or did earn is subtracted from the amount which he would have earned.

from those findings. *Blanchette* v. *Blanchette,* 362 Mass.
518, 522 (1972). *International Tel. & Tel. Corp.* v. *Hartford Accident & Indem. Co.,* 357 Mass. 282, 287 (1970).
*LiDonni, Inc.* v. *Hart,* 355 Mass. 580, 583 (1969). See *Cook*
v. *Farm Serv. Stores, Inc.,* 301 Mass. 564, 567 (1938).[4]

The master found that Ryan had not applied for any
teaching positions during the time she was not employed by
the Quincy public school system. This fact alone, however,
is not sufficient to establish that the employee could have
mitigated damages. *McKenna* v. *Commissioner of Mental
Health, supra* at 677.

The central dispute in this case concerns whether it was
reasonably likely that Ryan could have obtained a comparable job.

The master's subsidiary findings indicate that on a
nationwide basis the supply of art teachers on the secondary
level was 5,744 in 1973; while the demand for such teachers
was 2,478. In 1968 the supply of elementary art teachers
exceeded demand by 2,017. In 1969 this excess was 2,268;
in 1970, 2,706; in 1971, 3,678; in 1972, approximately
4,000. In the Quincy school system from September, 1969,

---

[4] This case, which was pending during the transition to the new rules of
civil procedure, comes before us in an unusual procedural posture. Under
the parties' agreement the case was to be submitted to the trial court for
review of the master's report pursuant to Mass. R. Civ. P. 53 (e) (2), 365
Mass. 817 (1974). The trial judge, however, determined that "the matter
is not coming before me pursuant to provisions of Rule 53 (e) (2) but more
in the nature of an action brought before the Court when the jury has
been waived and the Court giving the same weight to the so-called
Auditor's Report that the jury would give to it [under Rule 53 (e) (3), 365
Mass. 817 (1974)]." Both briefs consider at length whether the standard
of review accorded the master's report is the "clearly erroneous" standard
of Rule 53 (e) (2) or the "prima facie evidence" standard of Rule 53 (e) (3).
However, the principle on which we base our decision in this case — that
when subsidiary findings are reported, a trial court and this court may
reach different conclusions based on these findings — is applicable in actions
tried by a court both when a jury is waived and when a jury could
not have been demanded. *International Tel. & Tel. Corp.* v. *Hartford
Accident & Indem. Co.,* 357 Mass. 282, 287 (1970). *LiDonni, Inc.* v.
*Hart,* 355 Mass. 580, 583 (1969). Therefore, we need not decide whether
this case should have been governed by Rule 53 (e) (2) or by Rule 53 (e) (3).

to September, 1974, there were nineteen positions for art teachers and eighteen to thirty applicants for those positions. From 1968 through 1973, Rockland had two positions open for an art teacher at the junior high school level. No evidence was presented to the master concerning the number of applicants for these positions. Brockton had the following number of art teaching positions available: 1968: 1; 1969: 2; 1970: 11; 1971: 5; 1972: 8. The number of applicants for each year was not specified in the master's report, but he did find that in each year the number of applicants exceeded the number of positions. In Weymouth in 1968 there was one available position for an art teacher; in 1969, 1; in 1970, 2; in 1971, 2; in 1972, 1. No figures concerning the number of applicants are specified. In Newton the following art teaching positions were available: 1968: 8.9, 1969: 8.75; 1970: 6.85; 1971: 5.6; 1972: 5.2. Again the number of applicants is not specified.

The master found that references were an important factor in hiring decisions in Quincy and its neighboring towns. Walter Lunsman, the director of the art department in Quincy, had written a letter to Ryan expressing his opinion that her work was below the minimal expectations of the Quincy school system. He also found that in 1968 Lunsman told Ryan that the position which she had filled was being changed to a full time position and that he was not recommending her for that position. After Ryan's reinstatement, the Quincy school committee considered holding a hearing to determine whether there was cause to dismiss her.

The master also found that age, although not by itself a factor in hiring decisions, would be considered by Quincy and its neighboring communities in making hiring determinations. In 1968 Ryan was fifty-nine years old.

These subsidiary findings by the master clearly show that there was a limited and competitive market for art teaching positions. Lunsman's opinion of Ryan's work, his failure to recommend her for the full time position, and the school committee's intention to discharge her for cause lead to the reasonable inference that she would not have received favor-

able recommendations had she sought other employment. It is also reasonable to conclude that Ryan's age, though not determinative in any hiring decision, would probably not have been viewed favorably by prospective employers. We conclude that on the basis of these inferences the trial judge was correct in deciding that it would have been virtually impossible for Ryan to obtain another teaching position.[5]

Since we so conclude and since there is no claim that the teaching positions and the communities considered did not constitute the total market of comparable jobs, we need not decide the exact factors which would make a particular job "comparable" to Ryan's previous employment. However, we specifically hold that nontenured positions are "comparable" to tenured positions for the purpose of mitigating damages. Any other conclusion would render the requirement of mitigation inapplicable to tenured employees, a result which we have declined to reach.

The subsidiary findings warrant a conclusion that the defendants did not sustain their burden of proving that it was "reasonably likely that the former employee would obtain one of those comparable jobs." *Black* v. *School Comm. of Malden,* 369 Mass. 657, 662 (1976). Ryan, therefore, is entitled to receive as compensation the amount of wages which she would have received had she been employed in the Quincy school system from September, 1968, to September, 1973.

*Judgment affirmed.*

---

[5] The defendants argue that the trial judge's conclusion that the plaintiff would have been unable to obtain comparable employment was tainted by his erroneous determination that the mitigation doctrine was not applicable in the present case. However, the trial judge specifically found that the plaintiff would not have been able to obtain another teaching position before he considered whether the mitigation doctrine was applicable. Moreover, his opinion relied on many of the facts found by the master and his conclusion was correct on the basis of these facts.

The defendants also object to the nature of the judge's review of the master's report. We have considered this claim and find that there was no error. Since we have concluded that the judge was warranted in reaching his ultimate conclusion, no point would be served by an extended discussion of the defendants' contention.