August F. KOEDDING, Jr., August F. Koedding, III, and William F. Koedding, d/b/a Holiday Inn of Sullivan, Plaintiffs-Appellants,

v.

N.B. WEST CONTRACTING COMPANY, INC., Defendant-Respondent.

No. 41353.

Missouri Court of Appeals,
Eastern District,
Division Three.

March 18, 1980.

---

Thomas Cummings, Clayton, for plaintiffs-appellants.

Thomas M. Lang, Love, Lacks, McMahon & Schwarz, Clayton, for defendant-respondent.

DOWD, Presiding Judge.

Appellants sued respondent for breach of respondent's contract to perform certain asphalt paving work. The trial court found a subsequent agreement to guarantee the work was not supported by consideration and entered judgment against appellants upon their petition and against respondent upon its counterclaim.

The parties' contract obligated respondent to first excavate and patch certain broken areas of appellants' parking lot and then to resurface the entire parking lot. The agreed price for the work was $9,004.10.

The respondent's evidence was that appellants' parking lot was in poor condition before respondent did any work. The lot had large, deep chuckholes, and one could see "mud kind of seeping up through some of the spots." During discussions with appellants, respondent explained it could either completely redo the parking lot, which would be best because of evidence of base failure, or patch the parking lot and then resurface it. The appellants chose the latter alternative. Respondent gave evidence indicating it discovered an underground water problem beneath the parking lot when it began work that respondent so

informed appellants, and that appellants instructed respondent to proceed as planned.

Work was completed in the Spring of 1974. However, the contract price was not paid because appellants complained the work was not satisfactory. Respondent's evidence was that the complaints involved the common problem of power steering marks. Appellants claim the asphalt was spalling, or separating. After a meeting between the parties, respondent sent a letter in June, 1974 to appellants in which it wrote:

"We will seal the entire area with sand emulsion sealer and remove any areas that, in our opinion, are badly segregated and replace with fresh asphaltic concrete. After these repairs are made we will guarantee the work to be free from defects for a period of two years."

Appellants admit the guarantee referred only to respondent's work, not work previously done on the asphalt lot by others.

Respondent performed additional work on the parking lot in the Summer of 1974. A sand emulsion sealer was applied to the surface at a cost to respondent of $1,838.19 and some patching done. Thereafter, appellants paid respondent $9,004.10. Respondent provided additional patching or sealing for the parking lot in November of 1974 after appellants complained. Appellants made further complaints about cracks, breaks, and separation of the asphalt in the Spring of 1975.

During the Summer and Fall of 1975, appellants sent a series of letters to respondent demanding respondent do repair work upon the threat appellants would hire another contractor to do the work and later informing respondent of the proposal of another contractor and demanding reimbursement. Respondent performed additional work on appellants' parking lot on three separate occasions during the Fall of 1975. Respondent's evidence was that it would receive continual complaints, that appellants were never satisfied, and that respondent would seal each "little normal crack" as reported.

Appellants and respondent had further discourse in the Spring of 1976. At that time, respondent wrote:

"During our conversation on the parking lot I stated that we will repair any holes that may appear in the lot over the next three or four years. I also stated that it will need a little preventive maintenance from time to time, such as a house needs paint and toughing up. I will keep a watch on the lot and advise you by letter if and when it needs a seal coat or resurfacing.

"The base rock in the parking lot was not properly constructed, the subbase and original paving had very poor drainage, therefore I cannot be held responsible for any base failures which may or may not occur."

Shortly thereafter, appellants informed respondent it found respondent's proposal unsatisfactory and demanded respondent "fully perform [its] guarantee obligations." Later in the summer, appellants notified respondent of their arrangements with another contractor and demanded reimbursement.

Upon the foregoing evidence, the trial court found the June, 1974 "guarantee" was invalid for lack of consideration.

 Appellants contend the respondent did not plead the defense of lack of consideration and that the issue was not before the court. Lack of consideration is an affirmative defense to a contract action and must be pleaded and proven by the asserter. *Gover v. Empire Bank,* 574 S.W.2d 464, 468–69[1–3] (Mo.App.1978). Although the respondent's pleadings did not clearly raise the issue of lack of consideration, evidence of a lack of consideration for the claimed contract of guarantee of June 1974 came into the case without objection. Further indication of appellants' tacit agreement to join issue upon the affirmative defense is drawn from appellants' proposed findings of fact and conclusions of law. One of the proposed conclusions is that the contract of guarantee entered in June, 1974 was valid and supported by consideration. Issues not raised by the pleadings may be tried by

implied consent of the parties, and we deem the pleadings amended to conform to the issues as a matter of law. *Crain v. Webster Elec. Co-op.*, 568 S.W.2d 781, 786[3] (Mo. App.1978). Appellants' contention the affirmative defense was not before the trial court is without merit.

██ However, appellants' further contention that the contract entered in June, 1974 was supported by consideration is meritorious. It is true, as argued by respondent, that a promise to perform a preexistent contractual duty of the promisor does not constitute consideration. *C & M Developers, Inc. v. Berbiglia, Inc.*, 585 S.W.2d 176, 188[20] (Mo.App.1979). Nevertheless, respondent's promise of June, 1974 is supported by new and independent consideration given by appellants. Appellants' compromise of a good faith, disputed claim is a valuable and sufficient consideration to support a new promise. *Charles F. Curry & Co. v. Hedrick*, 378 S.W.2d 522, 533[12] (Mo. 1964); *B.H. Tureen Hotels v. Nachman & Co.*, 317 S.W.2d 422, 429[4] (Mo.1958); *Dickey v. Johnson*, 532 S.W.2d 487, 498 (Mo.App. 1975).

██ Our conclusion that the agreement of June, 1974 was a valid contract does not end our consideration. In this court-tried case, the judgment of the trial court will be affirmed if it reaches the correct result, even if based upon erroneous reasoning. *Lalumondier v. County Court of St. Francois Cy.*, 588 S.W.2d 197, 199[4] (Mo.App. 1979). We must, therefore, next consider whether the evidence in the instant case would support a finding the contract of June, 1974 was breached.

Appellants admit the June, 1974 guarantee referred only to respondent's work and not work done by others previously. Respondent informed appellants the appellants' parking lot exhibited some signs of base failure before beginning work and advised appellants the better approach would be to redo the entire parking lot. Respondent found evidence of base failure when doing work on the parking lot. Additionally, the contractor eventually hired to repair the allegedly defective work of respondent gave evidence that base failure was found in areas of appellants' parking lot and that the surface of the lot did not appear defective. Appellants did not introduce any evidence to prove areas which were claimed to be defective were respondent's work. The evidence would not support a finding that respondent breached its agreement to guarantee its work to be free from defects.

The judgment is affirmed.

CRIST and REINHARD, JJ., concur.