**Dorothy STEWART, Respondent,**

v.

**BOARD OF EDUCATION OF RITENOUR CONSOLIDATED SCHOOL DISTRICT, R–3, et al., Appellants.**

**No. 42331.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Jan. 5, 1982.

Motions for Rehearing or to Transfer to Supreme Court Denied Feb. 19, 1982.

Application to Transfer Denied
April 13, 1982.

Donald L. James, St. Louis, for respondent.

George J. Bude, Clayton, for appellants.

SIMON, Judge.

This teacher termination case comes before our court for the third time in five years.[1] On this appeal, the issues before our court relate to the proper measure of damages. The trial court awarded respondent Dorothy Stewart $108,948.01 in damages.[2] Appellant Board of Education of

1. The earlier cases are reported at 538 S.W.2d 765 (Mo.App.1976) and 574 S.W.2d 471 (Mo. App.1980).

2. The trial court specified: "that defendants pay to the Missouri Retirement System

Ritenour Consolidated School District (Board) contends that the trial court erred (1) in finding that Stewart could not have mitigated her damages; (2) in restoring thirty days of sick leave pay to Stewart because this issue had been previously litigated; (3) in awarding Stewart compensation for the loss of her teacher's hospitalization insurance policy because Stewart did not, in fact, sustain any damages resulting from the loss; (4) in awarding Stewart $500 to pay the fee and expenses of an expert witness because the amount was unreasonable; and (5) in awarding excessive attorney's fees. We affirm in part and reverse in part.

In 1974, Dorothy Stewart, by virtue of having taught in the Ritenour School District since 1959, was a permanent teacher under the Teacher Tenure Act, § 168.104(4) RSMo.1969.[3] In June of 1974 the Board terminated Stewart's teaching contract. Stewart contested her termination. As justification for Stewart's discharge, the Board claimed that during the previous five years she had been excessively absent from work. The trial court upheld the Board's actions. Our court reversed and remanded, finding that the Board's findings of fact and conclusions of law were insufficient. On remand, the trial court found that the Board had wrongfully discharged Stewart and ordered the Board to reinstate her at the salary level she would have attained had the Board not wrongfully discharged her. The trial court also awarded Stewart damages in the form of back pay plus 6% interest.

In the second *Stewart* case before our court, we affirmed the trial court's reinstatement order, holding that the Board had wrongfully discharged Stewart. We remanded the cause for a determination of the amount by which Stewart could have mitigated her damages. On remand, Stewart stated that she had made no efforts to secure any type of teaching position during the five years that she was unemployed. The trial court refused to reduce the Board's damages, awarding Stewart $108,948.01.

█ Our preliminary inquiry concerns whether there was sufficient evidence to support the trial court's findings of fact. Appellate review of a court tried case is limited. We must sustain the trial court's judgment, "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 31 (Mo. banc 1976). The court found that Stewart had been a tenured teacher in the Ritenour School District, but that she could not have obtained a tenured or non-tenured position in another district. As to the non-tenured position, the court found:

"3. If plaintiff had sought a non-tenured position in any other School District, she could only have done so by signing a one year contract in such District, and would have been compelled upon her reinstatement to either breach the contract with such District or to refuse reinstatement at Ritenour...."

After reviewing the entire record, we are convinced that there is no substantial evidence to support the trial court's third finding of fact. There was simply no evidence before the trial court that Stewart's taking a non-tenured teaching position would have placed her in the dilemma of deciding whether to refuse reinstatement or to breach her contract. The evidence merely showed that another school district would expect Stewart to complete a one year contract. There is no evidence to support the dilemma which the trial court found.

This determination does not dispose of the case. While we cannot act as a trial

$8,372.89 representing the principal and interest on unpaid retirement and pay to plaintiff the hospitalization and the interest thereon of $1,267.24, the plaintiff's salary of $84,032.00, and attorney's fees and expenses for the presentation of this action of $15,275.88, for a total

judgment of $108,948.01 together with the costs of this action."

3. All statutory references shall be to RSMo. 1969, unless otherwise noted.

court, we recognize that our primary concern is the correctness of the trial court's decision, not its reasoning. Our brethren in the western district, in a similar situation stated:

> "When this Court considers the evidence before it, under the searchlight of controlling law, and the reasonable conclusion and inferences to be drawn therefrom, and, in so doing, concludes that in a bench-tried case the proper result was reached, the judgment or decree should be affirmed. And this is true even though the trial court *may have assigned incorrect or erroneous legal or factual reasons for its judgment.*" (emphasis added)

*Kenilworth Insurance Co. v. Cole,* 587 S.W.2d 93, 96 (Mo.App.1979). Our court has reached a similar conclusion. *Koedding v. N. B. West Contracting Co.,* 596 S.W.2d 744, 747 (Mo.App.1980), ("judgment of the trial court will be affirmed if based upon erroneous reasoning.") We believe that the record supports the decision reached by the trial court concerning the issue of mitigation of damages.

The Board contends that Stewart failed to use reasonable diligence to secure similar employment. In *Wolf v. Missouri State Training School for Boys,* 517 S.W.2d 138, 142–43 (Mo. banc 1974), our Supreme Court stated: "the employer ... [may] reduce damages recoverable by a wrongfully discharged employee by whatever the employee has earned or by reasonable diligence could have earned during the period of wrongful discharge." (citations omitted) *Wolf, supra,* at 143. *Wolf* involved a wrongfully discharged state corrections officer. Our court, following *Wolf, supra,* held that the doctrine of mitigation applies to wrongfully discharged teachers protected under the Teacher Tenure Act, §§ 168.102–168.130. *Stewart v. Board of Education of Ritenour Consolidated School District,* 574 S.W.2d 471, 474–75 (Mo.App.1978).

A great deal of confusion surrounds the doctrine of mitigation. While it is often stated that the employee has the "duty" to mitigate damages, this characterization is misleading. As Professor Corbin notes, "The law does not penalize ... [plaintiff's] inaction; it merely does nothing to compensate ... [plaintiff] for the loss that he helped to cause by not avoiding it." 5 Corbin on Contracts § 1039 (1954). *See also* Reinstatement (Second) of Contracts § 336, Comment d. Thus, the doctrine of avoidable consequences is the basis for most rules of general damages. Missouri law is in clear agreement with that of the overwhelming majority of jurisdictions to the effect that the Board has the burden of proving that Stewart could have mitigated her damages. See *Lynch v. Webb City School District,* 373 S.W.2d 193, 199 (Mo. App.1963); *Curlee v. Donaldson,* 233 S.W.2d 746, 757 (Mo.App.1950); *Miller v. Woolman Todd Boot & Shoe Co.,* 26 Mo.App. 57 (1887); 11 Williston on Contracts § 1360 (1980). However, the crucial question concerns the precise elements of this burden and its application to the specific facts adduced at trial. We have been unable to discover any Missouri cases concerning mitigation of damages in employment contracts that elucidate the extent and nature of the Board's burden of proof. In reaching our decision we have relied on our courts' holdings in analogous situations, and have taken note of similar cases decided in other jurisdictions.

In *Curlee v. Donaldson, supra,* our court addressed the burden of proof issue. In *Curlee,* defendant's lumberjack wrongfully entered onto plaintiff's property and cut down a substantial number of trees, many of which they left lying on plaintiff's property. In plaintiff's suit for damages defendant claimed that plaintiff had the duty to mitigate and that the recovery should have been reduced by the amount of money that plaintiff could have received from a sale of the remaining cut timber. Defendant offered no evidence on mitigation and our court rejected the argument, holding that:

> "The burden is on the party claiming the allowance to introduce evidence which shows *the opportunity the injured party* had to dispose of the property and the

reasonable amount which he could have received..."

*Curlee, supra,* at 757 (emphasis added).

The *Curlee*[4] holding makes it clear that the defendant has the burden of proving that plaintiff's recovery should be reduced for failing to mitigate. Under *Curlee,* the Board must show not only that Stewart failed to mitigate, but that Stewart had an opportunity to mitigate. Furthermore, McCormick states, "It is not enough for the employer to prove that the plaintiff made no effort to get other employment, but he must go further and prove that such employment could have been secured." McCormick, Damages 628 (1975 reprint).

In *Ryan v. Superintendent of Schools of Quincy,* 374 Mass. 670, 373 N.E.2d 1178, 1181 (1978), the Massachusetts Supreme Court outlined the defendant's burden:

"A former employer meets its burden of proof of 'mitigation of damages' if the employer proves that (a) one or more discoverable opportunities for comparable employment were available in a location as, or more convenient than, the place of former employment, (b) the improperly discharged employee unreasonably made no attempt to apply for any such job, and (c) it was reasonably likely that the former employee would obtain one of those comparable jobs."

We believe the test enunciated in *Ryan* dovetails with our court's holding in *Curlee.* Apparently, the Board also believes that this test represents the applicable standard because the Board urges our court to adopt the identical rule as set forth in *Black v. School Committee of Malden,* 369 Mass. 657, 341 N.E.2d 896 (1976).

In *Ryan,* defendant school committee wrongfully discharged plaintiff Ryan, a fifty nine year old art teacher. After winning reinstatement, Ryan sought damages in the form of back pay. As in the case at bar, Ryan did not apply for any teaching positions during the five years of her unemployment. The court stated that "[t]his fact alone ... is not sufficient to establish that the employee could have mitigated damages." *Ryan,* supra 373 N.E.2d at 1182.

The court proceeded to examine the facts of the case to determine whether "it was reasonably likely that Ryan could have obtained a comparable job." *Id.* The court noted that the facts indicated that during the period in question the number of art teachers greatly exceeded demand. The court also noted that Ryan would not have been able to get favorable references from her former employer. Finally, the court concluded that Ryan's age would probably have been viewed unfavorably by any prospective employers. On these facts the court held that "the defendants did not sustain their burden of proving that it was 'reasonably likely that the former employee would obtain one of ... [the] comparable jobs.'" *Ryan, supra,* 373 N.E.2d at 1183.

Likewise, we do not believe that the Board met their burden of proof. The evidence introduced at trial reveals that there were teaching jobs available in the St. Louis area during Stewart's period of unemployment for which she was qualified. The Board presented three witnesses who were in charge of hiring teaching personnel in different metropolitan school districts. They testified that in every year from 1974 to 1979, each of their districts hired from zero to 27 teachers in Stewart's subject area. Generally, the number of applicants exceeded the number of vacancies. For example, Dr. Burchard Neel, Associate Superintendent for Personnel for the St. Louis Public Schools, testified that in 1976 when the St. Louis Public Schools hired 27 teachers there were several hundred applicants. The witnesses further testified that from 1974 to 1979 none of their districts had hired a teacher in Stewart's age bracket, with Stewart's qualifications, who had been discharged from another district. None of

---

4. Our brethren in the western district recently cited *Curlee* with approval, stating:

"The burden of proof of mitigation of damages is on the defendant who must show the opportunity the injured party had to mitigate and *the reasonable prospective consequences.*"

*Braun v. Lorenz,* 585 S.W.2d 102, 108 (Mo.App. 1979) (emphasis added).

the evidence indicated that there was a reasonable likelihood that Stewart could have received a teaching position. In fact, the evidence indicated that Stewart's chances of finding a teaching job were slim at best. Stewart was a fifty-five year old tenured teacher with fifteen years experience and a Masters degree plus thirty hours, who had been discharged for excessive absences. It is reasonable to conclude that Stewart's age, though not determinative in any hiring decision, would probably not have been viewed favorably by prospective employers. The three administrators from the other metropolitan school districts testified that if their district hired a teacher with Stewart's qualifications the teacher would be "credited" with five to ten years experience in the district for purposes of determining the teacher's salary. Salary schedules introduced into evidence showed that the salary of a teacher with Stewart's qualifications would be $4,125 to $6,400 greater than that of a new teacher.

We recognize that the Board did not have to prove conclusively that Stewart would have obtained a comparable job, but it did have to show that it was reasonably likely that she would have obtained such a job. Although Stewart was not required to prove that she would have been unable to find a teaching position, she did present evidence for this point. Dr. Ellen Harshman, Director of Career Planning and Placement at St. Louis University, testified that a person in Stewart's position would have "very poor" possibilities. Viewing the record in its entirety, we conclude that the Board did not meet its burden of proof. Our holding should not be construed to constitute our approval of a discharged employee's reaping a "reward" as a consequence of her failure to make a reasonable effort to mitigate her damages. Our holding is simply a result of the Board's failure to carry its burden of proof, i.e., of showing there was a reasonable likelihood that Stewart could have obtained one of the available positions. Therefore, we affirm the trial court's decision that Stewart's recovery should not be reduced for her failure to mitigate.

■ The Board's second point is that the trial court erred in restoring Stewart thirty days of sick leave for the 1973–74 school year. The Board argues that this issue was previously litigated. In 1976, Stewart brought suit against the Board to obtain reimbursement for sick leave pay that she alleged was due to her from the 1973–74 school year. In that case, the trial court found against Stewart on this issue. Here, the trial court held that Stewart was entitled to sick leave. Stewart was relitigating the precise issue which had been disposed of in an earlier proceeding against the Board. Well established principles of *res judicata* preclude the same parties from litigating issues that have been previously adjudicated by a court of competent jurisdiction. *Prentzler v. Schneider*, 411 S.W.2d 135, 138 (Mo. banc 1967). Therefore, we reverse that part of the judgment relating to sick leave.

■ The Board next contends that the trial court erred in granting Stewart damages for the loss of hospitalization insurance coverage during the time of her wrongful discharge, because there was no evidence that Stewart had been damaged. At trial, George Chapman, the Assistant Superintendent of Schools in the Ritenour School District, testified that the premiums for the insurance were paid directly to the insurance company. The record is devoid of any evidence that Stewart incurred any hospitalization costs during this time, and there is no evidence to indicate that Stewart purchased a substitute hospitalization plan during this time.

A similar situation to the case at bar existed in *Mass v. Board of Education of San Francisco Unified School District*, 61 Cal.2d 612, 39 Cal.Rptr. 739, 394 P.2d 579 (banc 1964). There a teacher was found to have been wrongfully discharged and claimed as part of the damages the loss of medical insurance during the time of wrongful discharge. The California Supreme Court stated: "[P]laintiff proved no incurred medical expenditures or 'losses' from 'other insurance plans.' Plaintiff is

**136**

therefore not entitled to any recovery on these latter matters." *Id.* 39 Cal.Rptr. at 747, 394 P.2d at 587. We believe this reasoning to be sound. To allow Stewart to recover on this question would allow her to recover more than she lost. Therefore, we reverse the judgment of the trial court with respect to the award of damages for the loss of hospitalization coverage.

■ The Board's final two claims will be considered together. The Board claims that the trial court erred in awarding Stewart attorney's fees totaling $15,275.88. The Board also claims that the trial court erred in awarding Stewart $500 for the fees and expenses of Dr. Leroy Grossman, an expert witness. We agree and, accordingly, reduce Stewart's damages by $15,775.88.

In *Wolf v. Missouri State Training School for Boys, supra,* our Supreme Court, quoting from *Perrella v. Board of Education,* 51 N.J. 323, 240 A.2d 417, 428 (1968), held that a wrongfully discharged Corrections Officer "should be given credit for attorney's fees and expenses in the determination of the sum to be deducted in mitigation of back pay...." In the second *Stewart* case, our court applied the *Wolf* holding to wrongfully discharged teachers and remanded the cause "for a determination of the amount by which [the] back-pay award is to be mitigated under the rules of avoidable consequences to have credited against such amount the counsel fee plus expenses which the employee has paid or obligated himself to pay...." *Stewart, supra,* 574 S.W.2d at 475. In the instant case, the trial court did not credit Stewart's fees and expenses against an amount to be deducted. Rather the court added the fees and expenses to Stewart's damage award. Under the holdings in *Wolf* and the second *Stewart* case this was error. The award of fees and expenses in this case was improper. Therefore, we reverse the trial court's award of $15,775.88 for fees and expenses.

For the foregoing reasons, the judgment of the trial court is affirmed in part and reversed in part. Judgment entered accordingly.

SATZ, P. J., and SMITH, J., concur.